BREAUX, O. J.
This is an action to annul a tax title.
David Young, Jr., was the adjudicatee of lands at tax sale.
The grounds of attack on the tax title are that the land had never been forfeited to the state for the taxes of 1877, 1878, and •1880, for which the land was sold; that no notice of any kind was ever given to the owner; that petitioner had paid the taxes on the property; that the property was not advertised the number of days required.
Defendant seeks to meet plaintiff’s attack by urging the want of interest in plaintiff, as the land in dispute, as he alleges, is not his land; that the land in plaintiff’s deed is not the same land which forms the subject of this controversy; that in the amended petition plaintiff has taken a position inconsistent with and destructive of his title, as alleged in his original petition; that in the •amended petition plaintiff sets up a deed of 1824 from Joseph Chisholm to Isaac Browning, and attempts to exhibit a line of title from Browning culminating in plaintiff.
Defendant seeks to point out that Joseph Chisholm sold the land in litigation in 1824 to Isaac Browning, who represented in the deed that he acted for the minors John and Joseph Browning, -and that in consequence it cannot be that the title passed from any of the Brownings to plaintiff or any one else; for the recital of the deed does not justify that assumption.
But defendant traces his title to the Browning deed, and claims that it excludes the plaintiff entirely from the possibility of tracing his title to that deed.
Defendant further urges that he has gone further than necessary, and has even traced out plaintiff’s title under the amended petition ; that it relates to a different tract of land; that the land known as the “McRea tract” was bought by the defendant at tax sale; that after the tax sale plaintiff laid claim to this land, and defendant transferred! it to him for a nominal price.
Defendant claims to have shown that in 1816 Isaac Browning bought the McRea tract, which he (defendant) abandoned to plaintiff; that in 1818 Isaac Browning sold this land to John Browning, another John Browning than the one to whom plaintiff traces his title.
Defendant avers that his title begins with the deed from Joseph Chisholm to Isaac Browning in 1824, and he traces it by successive stages to himself.
Disposition of Section 86 According to Defendant
“On October 25, 1807, by a receipt recorded March 28, 1818, by Charles Tessier, parish judge, David I-Iolston sold this section to Isaac Browning, 600 acres.”
Isaac Browning then disposed of this section as follows:
“(a) On May 4, 1818, he sold 150 acres to-John Browning. [This was the northern portion, aftei’wards known as the ‘McRea tract.’].
“(b) On January 24, 1831, he sold 216 arpents, more or less, to Frances S. Chisholm, of East Feliciana.
“(c) On October 29, 1832, he sold to Parsons Carter 36 arpents. [This lies immediately south of the land above sold to Frances Chisholm, and is the 36 arpents included in plaintiff’s original petition, but abandoned to defendant on the trial of this case.]
“(d) On November 19, 1823, he sold to Zadoc Brashiers 80 acres. [This is now a part of the old Young homestead.]
“(e) On May 4, 1818 [the same day he made-the sale of 150 acres to John Browning], he sold 116 arpents to Isaac Browning, Jr.”
This is all very well ‘so far as it goes, but it does not lay a very solid foundation for a judgment in view of the following testimony of Womack, surveyor, assisted by JudgeBrame, who was a surveyor:
“We began at northeast corner of section 86. There was no evidence of adverse possession of the tract of land in controversy in this, suit, which is identified as section 92, and that part of section 87 in the parish of East Baton Rouge, in T. 4, S. R. 1. W., known as ‘Bismark’ plantation, containing 750 acres.”
*241 It is evident that the MeRea tract is not in section 92, or 87, but that it is in section 86, or, if it is not in 86, it is not in section 87 or 92.
The MeRea tract formed part of land bought by defendant at tax sale. He transferred it to plaintiff in error as plaintiff contends. He (plaintiff) is willing to relinquish and to abandon all claims to it in favor of defendant.
Plaintiff limits his claim as owner to lands in the sections before mentioned.
We have not succeeded in locating the Mc-Rea tract in the sections mentioned above, nor have we succeeded in tracing the claim of plaintiff as including the MeRea tract.
There is a break in the chain of title of ancient date. Where the title begins anew, it is not in defendant, but in plaintiff. The new title precedes by a great many years the date this suit was brought.
John Brownson sold the land in the 40’s of last century. His deed transferred the property. He must have conveyed some sort of title. It is too late to hold that Mrs. Garter’s successor in course of time was not the owner of the land that passed to plaintiff.
Defendant propounds the question: In view of all these facts, is it not more reasonable to suppose that Isaac Browning treat-, ed this land from Joseph Chisholm as his own and sold it subsequently to Parsons Carter?
We leave the inquiry into the chain of title for the time being to take up the question of possession, one of the important issues of the ease.
The testimony shows that plaintiff went into possession of the land from the date that he became the owner in 1866 to the day that he departed this life. He was succeeded in his possession by his heirs.
Isaac D. Wall, a nephew of the late Judge Kernan, attended to his business in 1884 and a number of years afterward. He testified positively regarding the possession in plaintiff. He furthermore stated that he settled all his taxes, and that all taxes on the-place had been paid.
A Mr. Appleby, who knew all about the-place, and had owned a part of it, testified, that to his knowledge plaintiff had been in-actual, open, and peaceful possession sinee1873.
The evidence of actual possession leaves no-ground for discussion as relates to the question of possession.
No attempt was made to rebut the testimony as relates to possession in any way.. That one fact is certainly fully sustained. Evidence of possession cannot be more direct and positive. Timber was cut down on the land, boards were made, cordwood was chopped, and a fence placed around with rails-cut on the place.
Moreover, the land was thoroughly surveyed at one time. A party went out to the-place, including the plaintiff, and during three-days they were there engaged in establishing-the boundary lines.
There was no adverse right urged up to. the year 1897.
In that year the defendant inquired of' plaintiff’s tenant if he was cutting down timber on the land. He requested the tenant to-cease cutting.
This was reported to plaintiff, and a short time thereafter this suit was brought. Over 30 years had elapsed since plaintiff’s interrupted possession under title began.
The plantation of plaintiff was known under the name of Bismark.
Plaintiff had possession with title.
The first in the chain of title to which we-have directed attention is the procés verbal of the succession sale of the property to Mrs. E. D. Carter, dated November, 1866, at which, the land described as being in the parish of' *243 East Feliciana near “the plains” and containing 720 acres was adjudicated to McRea and Kernan.
In this procSs verbal the different deeds are traced back to Joseph and Frances Chisholm 'in April, 1859.
In February, 1888, it appears that McRea •sold his half of the place to Benjamine Apple-by, the witness to whom we have referred. In the deed it is referred to as the land 'bought by McRea and Kernan, just above mentioned, and containing 750 acres, more or less.
The land was described as being bounded ■east by the Mrs. John East tract, south by the Thompson tract, and west by the land of Mrs. M. B. Richardson.
The same undivided one-half was sold by Appleby to Kernan, who thereby became the ■owner of the whole place in July, 1893.
Going back to the year 1859, we find that in that year Mrs. E. D. Carter became the ■owner of the land by deed which is before us, and by different stages the title goes back to Browning. Defendant’s contention is that there were two John Brownings, and that the John Browning claimed by plaintiff as one ■of his authors was not the owner. Whether to the John Browning claimed by the defendant or to the John Browning claimed by the plaintiff is not of the greatest moment in ■our view of the cause; for evidently the title passed from a John Browning to Mrs. ■Carter and from Mrs. Carter to plaintiff. In our opinion the John Browning from whom plaintiff claims title was the owner. But, be that' as it may, the John Browning sale was sufficient to convey title, and, after the land passed from him, the title of plaintiff’s authors, dating back over 30 years before the suit was filed, it was legal enough to be a notice to the tax assessor not to assess the property in the name of another than the record owner since so many years.
We imagine how it happened that the land was sold'at tax sale.
Part of the Bismark place extended over the south boundary line of East Feliciana into the parish of East Baton Rouge. The area, thus extending over into the parish of East Baton Rouge, was about 250 acres. The assessor, not finding title to this land in the latter parish, assessed it, without specially inquiring whether it formed part of the larger tract just over the line in the parish of East E’eliciana.
He assessed two tracts, one of 80 acres, bounded on the north by Kernan, south by Thompson, and west by Kernan.
Another tract he assessed as containing 100 acres, bounded north by Kernan, west by D. Thompson, south by T. L. Miller, east by Norwood; and he assessed another tract, measuring 30 acres, bounded north by Kernan south and west by Young, and east and west by Thompson and Young.
As we have said before, some of these lands formed part of the Bismark place, on which the taxes had all been paid in East Feliciana for the years for which the lands were assessed, and afterwards sold for the taxes.
Kernan, learning that part of his lands had been sold for taxes through an agent, called upon the defendant, and bought for a nominal price from him the land which the agent thought was the land forming part of the plantation.
It happened that through error of the agent plaintiff did not recover by that purchase all the lands forming part of his place, and, when he was notified through his tenant not to cut wood, he then found that defendant was laying claim to a part of his place, the title to which he had no reason to believe he had ever lost.
Defendant’s Plea of Want of Interest.
To sustain that plea it must appear that plaintiff is claiming land not forming part of the body of land known as the “Bismark place.”
*245 Conceding for a moment that there is a faw in the title, it none the less is a title acquired in good faith of an ancient date. Un-der our system of taxation special attention igoes to record title to immovable property. Generally all assessments are made against the record owner of the land, and this is what has been done. The title of record is in East Feliciana, and there the property was ■assessed.
The state officers of the assessing department can scarcely be heard to urge ignorance of the parish boundaries of their respective parishes.
This court has recently had occasion to hold that the state cannot sell the same property in two parishes and confer title under each -deed for the same tax. Booksh v. Wilbert, 115 La. 351, 39 South. 9.
In this instance it does not appear that there was negligence on the part of the plaintiff owner. He paid his taxes promptly for the years before mentioned. When he found that his property had been sold in another parish, he at once sought to protect himself against the second sale, and was met by the adverse claim of defendant.
He does not seek to benefit himself by this ■error, before mentioned, for he offers to rectify it in so far as all parties are concerned.
From the foregoing statement we are constrained to reach the conclusion that plaintiff has an interest to stand in judgment.
Chain of Title Claimed by Plaintiff.
He had acquired a right to the body of land before mentioned. He had bought that In good faith, had it surveyed and exercised the rights of an owner without the least question from any one for many years, over thirty.
Even if there was a link missing prior to the year 1866, it did not adversely affect the •validity of the chain of title since that date.
Chain of Title Claimed by Defendant.
Granting that originally between the two John Brownings, it is not possible to determine which of the two had the title. Granting further for a moment that defendant’s title goes back to defendant’s and not to plaintiff’s John Browning, it remains as a fact that the property passed into the possession and ownership of Mrs. E. D. Carter, at whose succession sale it was adjudicated to plaintiff.
We have searched in vain for a complete chain of title from John Browning which came by regular stages to the defendant.
It did not come to the defendant through Parsons Carter, nor through Mrs. Wm. Carter. It does not appear that Parsons Carter ever owned the land; and, as to Mrs. William Carter, we have seen that her title passed to plaintiff.
We cannot assume that which the record does not show and decide upon the assumption that the Carters owned the land and transferred it to the defendant.
Defendant’s Plea of Prescription.
The prescription of three, five, and ten years is interposed.
They do not recommend themselves as sufficient to defeat plaintiff’s claim. Defendant was never in possession of the property, and never had possession; that is, he never went into possession of any part of the Bismark plantation, for we have seen that that possession was in plaintiff.
The tax collector sought to give title to this land, although it had been assessed in the names of persons not in possession and without title.
A tax title of. a date prior to the Constitution of 1898, not based on record title, without possession of an asserted tax debtor, will not afford ground upon which to sustain the prescription pleaded.
It follows from the foregoing that article *247 186 of the Constitution of 1898, regarding prescription of tax title, has no application to the issues here.
Defendant was never in possession of the land claimed by plaintiff.
This entirely disposes of the question regarding tax title.
The extent of the ruling:
Defendant in counsel’s brief urges that, inasmuch as plaintiff does not pretend to have any interest in a smaller tract of some 30 acres, the judgment of the lower court should be amended so as to preserve the rights of defendant.
We turn to the petition of plaintiff, and find that it asks for the annullment of the title to this land; and the judgment of the district court annulled it.
The judgment should be confined to the tract of land referred to as belonging to plaintiff and extend no further.
The judgment will have to be amended in this respect. And, according to the article 549 of the Code of Practice, it must be amended at appellee’s cost.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is amended at appellee’s cost.
It is further ordered, adjudged, and decreed that the judgment be limited in its effect to the body of land known as the “Bismark place.”
As amended, the judgment is affirmed, at appellee’s cost.