(36 South. 112.)

No. 14,912.

KELLOGG v. McFATTER.

(Feb. 29, 1904.)

DEED—DESCRIPTION OF PROPERTY—TAXATION —SALE—PAYMENT OF TAXES.

1. The plaintiff, owning the north half of section 20, township 7 south, range 3 west, sold to A. E. Minor, on the 13th of October, 1888, 100 acres off the east portion of the section. The exact position of the land was located by a survey, and taken possession of by the vendee. Plaintiff subsequently sold to E. D. Minor "80 acres off the west portion of the north half" of the same section, the line to be afterwards surveyed so as to join the 100 acres sold on the 13th of October, 1888, to A. E. Minor. The position of this land was located by a survey adjacent to that sold to A. E. Minor, and taken possession of under the survey. Held, that the controlling call of the title was the recital that it should be so surveyed as to join the land sold to A. E. Minor. City Bank v. Denham, 7 Rob. 39; Labiche v. Jahan, 9 Rob. 30; Kernan v. Baham, 13 South. 155, 45 La. Ann. 799.

2. Where all of the taxes on the north half of a section of land for a particular year have been paid in point of fact by the different owners of land therein, though it might be under assessments erroneous in description, this payment will defeat the power of the tax collector to sell any part of it for taxes of that year. It matters not that the parties making the payment were not the owners of the particular tracts assessed in their names. That would be a matter for correction and adjustment between the owners of the various tracts.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Denis Miller, Judge.

Action by T. J. Kellogg against J. W. McFatter. Judgment for plaintiff, and defendant appeals. Affirmed.

Cline & Cline, for appellant. Leon Sugar, for appellee.

Statement of the Case.

NICHOLLS, C. J. The plaintiff alleged that on the 3d day of May, 1888, he purchased from Andrew Stanch 325 acres of land known and described as the "North half (N. ½) of section twenty (20), in township seven (7) south, range three (3) west"; that he had been in continuous possession of the same ever since the date of the purchase, and at the time of the filing of his suit was in the actual corporeal possession of the land, and was the legal and bona fide owner of the same, except and less certain parts thereof, which he described, which he had sold at certain dates and to certain persons stated. The portion so sold he declared to have been:

100 acres sold to A. E. Minor on October 13, 1888, described as "100 acres off the east portion of north half section 20, T. 7 S., R. 3 W., the 100 acres to be afterwards established," which deed was recorded.

(2) 80 acres sold on November 22, 1888, to E. D. Minor, described as "80 acres off the west portion of north ½ of section 20, T. 7 S., R. 3 W., the line to be afterwards surveyed so as to join the 100 acres sold on the 13th day of October, 1888," to A. E. Minor, which sale was recorded.

(3) 40 acres sold on June 10, 1889, described as "40 superficial acres embraced in N. E. ¼ of section 20, T. 7 S., R. 3 west," which sale was recorded.

(4) 40 acres sold on June 22, 1890, to James W. Robinson, described as "40 acres in N. W. ¼ of section 20, T. 7 S., R. 3 west, bounded east by A. Minor, north by George Christian, west by vendor, south by public road," which sale was recorded.

(5) One acre sold on July 11, 1888, to the China Public School Building Association, described as "commencing at the S. W. corner of N. W. ¼ of section 20, T. 7 S., R. 3 W., east 12 rods, north 13 rods, west 12 rods, south 13 rods, being part of the Stanch land," which sale was recorded.

(6) A strip sold in September, 1894, to the parish of Calcasieu for a public road, as shown by the books of the conveyance office of Calcasieu parish.

(7) Half an acre sold on October 7, 1898, to Otis C. Tupper, described as "a part of the N. ½ of the N. W. ¼ of Sec. 20 of T. 7 S., R. 3 west, commencing at a point 214½ feet north of the southwest cor. of the above-described tract, and running east 198 feet; thence north 108 feet, thence west 198, and thence south 108 feet, to point of commence-

ment, being in area one-half an acre," which sale was duly recorded.

He alleged that, deducting from his original holding the parts sold by him, there remained as his property, justly free from all claims and demand of whomsoever, 65 acres, more or less, off of the west end of the north half of section 20, T. 7 S., R. 3 W., less the one-acre tract sold to the China Public School Association, and less the one-half acre tract sold to Otis C. Tupper. He averred that his various vendees took immediately the actual possession of the properties purchased from him by established lines, the strip sold for a road having been ever since the sale in continuous use as a public highway.

He averred that John W. McFatter, one of the defendants, claimed to have purchased his property at a private sale made by the state, by the State Auditor, on January 20, 1902, under Act No. 80, p. 88, of 1888, and Act No. 126, p. 181, of 1896, it being asserted that petitioner's land had been adjudicated to the state in the year 1895 for taxes due by petitioner for the year 1894; that McFatter had caused a deed from said auditor to be spread upon the conveyance records; said deed recites said facts.

He averred that said sale to McFatter was absolutely null and void for the reasons:

(1) He had paid all taxes due by him on property owned by him for the year 1894 prior to said pretended adjudication in the year 1895.

(2) The description given in both the original adjudication to the state of Louisiana, and in the act of transfer from the state to McFatter, and in the respective advertisements leading up to said adjudication and to said sale were fatally erroneous in that petitioner's property was described as "63 acres West ¾ of W. ½ of N. E. ¼ of section 20 T. 7 S., R. 3 W., whereas the only property owned by petitioner in the year 1894 was located in the western part of the west ½ of N. W. ¼ of said section.

(3) Said McFatter paid no taxes upon said land for any of the years from 1894 to the date of his purchase, but all of said taxes had been paid by petitioner and by others who held title beginning with petitioner.

Plaintiff averred that, notwithstanding said error in description, and notwithstanding said sale from the state to McFatter was an absolute nullity, yet it operated and had all the effect of a cloud upon his title, and he was legally entitled to judgment declaring said sale a nullity; that he had protested against said sale, but McFatter persisted in asserting his own title and slandering plaintiff's title, to his great injury and damage; that he had been forced to employ counsel to vindicate his rights.

He further alleged that his property was illegally adjudicated to the state of Louisiana in the year 1898 for taxes of 1897, and was illegally sold in the year 1901, through the tax collector, under and by virtue of Act No. 80, p. 88, of 1888, to D. C. and A. F. Lyons.

That the adjudication to the state in 1898 for taxes of 1897 was absolutely null and void for the reason that petitioner had prior to the date of said adjudication to the state paid all taxes due by him, or on property owned by him. For the same reasons the sale made by the tax collector in 1901 was an absolute nullity, and for the further reason that said property was assessed as the property of A. E. Minor, and was sold in the name of Minor, who was never at any time the owner thereof. That A. F. and D. C. Lyons had paid no taxes upon said land for any of the years from 1897, the date of their purchase, but all of such taxes had been paid by petitioner and by others who held title beginning with him. That D. C. and A. F. Lyons had caused a deed from the said tax collector, purporting and pretending to transfer to them petitioner's property by virtue of said sale, to be inscribed in the conveyance records of Calcasieu parish. That notwithstanding the absolute nullity of the said adjudication to the state in the year 1898 for the taxes of the year 1897, and the absolute nullity of the deed from the tax collector to D. C. and A. F. Lyons, it operated and had the effect of a cloud upon his title, and he was entitled to a judgment declaring said sale a nullity. That notwithstanding his protest, they continued to assert title to petitioner's land, and slander his title. That they had insisted upon asserting ownership, and attempted to be placed in possession by virtue of the said sale. to his great damage and injury, compelling him to employ counsel to vindicate his rights. In view of the premises he prayed that Mc-

Fatter, A. F. Lyons, and D. C. Lyons be cited, and that he do have judgment declaring the sale from the state to John W. McFatter a nullity, and recover $100 for attorney's fees as damages.

That he have judgment against D. C. and A. F. Lyons declaring the sale to them from the state a nullity, and that he recover from them $100 for attorney's fees as damages. McFatter excepted that plaintiff's petition declared no cause of action.

D. C. and A. F. Lyons pleaded in bar of plaintiff's action the prescription of one year established by Act No. 80, p. 88, of 1888. This exception was referred by the court to the merits.

They further excepted that the plaintiff was without interest to prosecute the suit, having parted with his title to the land in controversy to E. D. Minor on November 22, 1888, and never afterwards acquired title thereto.

Under reservation of these exceptions they answered, averring that E. D. Minor sold and conveyed the land to A. E. Minor on February 24, 1890, by deed recorded March, 1890; that the land was regularly adjudicated to the state in default of payment of the taxes due the state for the year 1897, said adjudication being in the name of A. E. Minor, in 1898, by deed duly recorded in Calcasieu parish; that the taxes due the state on said land for the year 1897 had not previously to said sale been paid, and that said sale was legal; that the said land was not doubly assessed; that the said sale and its recording occurred more than three years prior to the institution of this suit, and plaintiff was barred by the effect of article 233 of the Constitution of 1898 from setting up any causes of nullity of said adjudication except previous payment of taxes or double assessment; and they specially pleaded the prescription established by that article. They further averred that more than one year prior to the institution of plaintiff's suit they were placed in actual physical possession of the land pursuant to an order of the civil district court issued previous thereto, commanding the sheriff to place them in possession; that the order was duly executed by the sheriff or his deputy, who went upon the land, and, finding one Tupper residing thereon, notified him that he took possession pursuant to said order, and then and

there did deliver physical possession to defendants through A. F. Lyons, then and there acting for them, who then and there leased the said land to Tupper at a monthly rental of $5; that through said Tupper they had been in continuous physical possession of said property since said date, and still remained in possession thereof.

They alleged that they were the joint and legal holders of said land, and specially denied any ownership of the plaintiff therein.

They prayed that plaintiff's suit be dismissed, and that they be decreed the just and legal owners of the said property.

The defendant McFatter, before trial, appeared, declaring that his title to certain lands derived from the state by sale made January 20, 1902, as evidenced by auditor's deed of said sale, affected the west three-fourths of the west half of northeast quarter of section 20, T. 7, R. 3 W., containing 63 acres, and that he did not claim by virtue of said deed, or by any other title, any other part of the north half of section 20, T. 7 S., R. 3 W., and he especially disclaimed any ownership or rights in or to the west 65 acres of the north half of said section.

On the 10th of March, 1903, the district court, after reciting that, the exception of no cause of action having come up for trial on February 19, 1903, the said exception was overruled upon agreement of counsel for plaintiff and the defendant in open court that upon the filing by the defendant of a disclaimer of title to the west half of the northwest quarter of section 20, T. 7 S., R. 3, claimed by the plaintiff in the suit, the demand of plaintiff against defendant should be dismissed, at the costs of the plaintiff, and, the said disclaimer having been filed on February 20, 1903, rendered judgment dismissing plaintiff's suit against McFatter by reason of said agreement, and the law and the evidence being in his favor.

On the trial of the cause it was admitted for the purpose of the plea of prescription which had been filed that plaintiff resides upon the land in contest, and had resided there continuously from a time previously to the filing of the deeds which had been offered in evidence.

The district court, on the 1st of May, 1903, rendered a judgment in favor of the plaintiff against the defendants D. C. and A. F. Ly-

ons, which declared that the demand of the plaintiff for the nullity of the deed held by defendants of date of October 23, 1901, and of date October 15, 1901, from the state of Louisiana, to the land as described as 80 acres, W. ½ of N. W. ¼ of section 20, T. 7, R. 3 W., less part sold to D. C. Minor, claimed to have been adjudicated to the state in the year 1898 for taxes of the year 1897, be sustained, and the deed to the defendants be declared null and void.

Defendants appealed.

### Opinion.

The record shows that the plaintiff, Kellogg, purchased from Andrew Stanch the north half (N. ½) of section twenty (20), T. 7 S., R. 3 W., on the 3d of May, 1890, and that he disposed of different parts of that land to the different parties whom he names in his petition under the descriptions mentioned. It is shown that he has been continuously in possession of the property (since the date of his purchase) of which he claims ownership at present, and that his different vendors immediately after the sale to them went into actual possession of the property conveyed to them, and have remained in possession ever since; that the lines of the properties sold by plaintiff to A. E. Minor and that sold by him to Eugene Minor were fixed and determined by surveys made after the sales, and both of these vendees took possession under their purchases according to those surveys. There is and can be no question as to what property was sold by plaintiff to A. E. Minor on the 3d of October, 1888. The property sold was described as 100 acres off the east portion of the N. ½ of section 20, T. 7 S., R. 3. We think it clear that the property sold by plaintiff to Eugene Minor on November 22, 1888, was a strip of 80 acres of land immediately to the west of and adjoining the 100 acres sold to A. E. Minor. The act of sale of that property declares that the 80 acres are to be subsequenty surveyed so as to join the 100 acres sold to A. E. Minor on the 13th October, 1888. That language is clear and unambiguous, and is the controlling call in the title. Kernan v. Baham, 45 La. Ann. 799, 13 South. 155. Defendants' claim that because the land is referred as to be taken off the west portion of section 20 the par-

ties must have intended to convey 80 arpents in the extreme western end of the section is untenable. It is inconsistent with the subsequent acts of the parties in taking possession of the properties sold to them; and the expression relied on is, besides, a very loose and indefinite one—the land relatively to the position of the property sold to A. E. Minor to be taken to the westward of the section. Eugene Minor, on the 24th of February, 1890, sold to Absolom E. Minor 80 superficial acres of land, being all of the tract of land bought by him from T. J. Kellogg, and described as the "west portion of the north half of Sec. 20, T. 7 S., R. 3 W." The two Minors understood perfectly what property had been sold by Kellogg to Eugene Minor, and by the latter to his brother Absolom E. Minor, as the two tracts sold to them were cultivated together as one by them.

A. E. Minor subsequently sold the property which he had bought from Eugene Minor, together with the tract which he had himself originally bought from Kellogg, to D. C. Minor, describing the whole tract as the northeast quarter (N. E. ¼) of section twenty (20), T. 7, R. 3 west, and a strip 20 rods wide on the east side of the northwest quarter of the section. There is no attempt on the part of the defendants to explain when and from whom A. E. Minor obtained that portion of the northeast quarter of the section which exceeded 100 acres, and when and from whom he obtained the strip of 20 acres to the west of the west line of the northeastern quarter of the section, if he did not acquire it from Eugene Minor, and if Eugene Minor had not, as he declared, acquired it from Kellogg. Kellogg himself certainly never sold it to A. E. Minor. If Absolom E. Minor did not acquire in that manner, he sold to D. C. Minor property belonging, not to himself, but to a third person. Eugene Minor himself subsequently acquired from D. C. Minor this same property, so that he also (unless the 80 acres just west of the 100 acres which Absolom E. Minor had bought from Kellogg was that which he himself had bought from Kellogg) bought property which Absolom E. Minor and D. C. Minor did not own.

Kellogg, after selling the 100 acres to Absolom E. Minor and the 80 acres to Eugene Minor, sold first 40 superficial acres to Mrs.

Christian, and afterwards 40 superficial acres south of those sold to her to James W. Robinson.

Defendants, in their brief, say that Kellogg sold to Mrs. Mattie Christian the N. E. ¼ of N. W. ¼, section 20, T. 7, R. 3 W., but that is a mistake. What he sold was 40 acres "embraced in" the northeast quarter (N. E. ¼) of the northwest quarter (N. W. ¼) of section 20, T. 7, R. 3 W. These two vendees took possession of their tracts, and they or their heirs or assigns now occupy the same just to the west of the 180 acres included in the sales to A. E. Minor and Eugene Minor. Kellogg now occupies, and he has always occupied, the balance of the northwest quarter (N. W. ¼) of section 20 lying just to the west of the Christian and Robinson tracts, with the exception of the small portions of same sold to the China Public School Association, and that transferred to the parish for a public road on the extreme west (the western line of section 20). These properties, taken together, make up the whole body of the land contained in the north half of section 20.

Absolom E. Minor has never pretended to own or attempted to claim any land in the western portion of the section. That land (as has been said) has been continually occupied by Kellogg. Notwithstanding that fact, the assessor for Calcasieu assessed A. E. Minor for the taxes of 1897 upon 80 acres of land W. ½ N. W. ¼ 20—7—3, less part to D. C. Minor.

On the 15th of October, 1901, the tax collector made a deed of sale to A. F. and D. C. Lyons of the west half of the northwest quarter of section 20, T. 7, R. 3 W. In the act he recited that the sale to them was made at public auction under Act No. 80 of 1888, for the price of $12, and that this land had been adjudicated to the state of Louisiana in enforcement of the taxes upon it for the year 1897 under an assessment thereof in the name of A. E. Minor. This act was recorded on the 19th of October, 1901.

The tax collector made a second deed of sale to the same parties on the 23d of October, 1901, in which he recited that he had offered for sale at public auction the west half of the northwest quarter of section 20, T. 7 S., R. 3 W., in the name of A. E. Minor, less part sold to D. C. Minor, and adjudicated the same to A. F. and D. C. Lyons for the price of $12; that this land had been adjudicated to the state for the taxes of 1897; that this second deed was executed to correct the description given in the prior act. This second deed was recorded October 30, 1901.

There is in the record a copy of the assessment of the north half of section 20 for the year 1897, in which D. C. Minor is assessed upon the N. E. ¼ and a strip 20 rods wide on the east side of N. W. ¼.

A. E. Minor is assessed on 80 acres W. ½, N. W. ¼, 20—7—3, less part sold to D. C. Minor.

T. J. Kellogg is assessed on 60 acres W. ¾, W. ½, of N. E. ¼, 20—7—3.

J. W. Robinson 40 acres S. E. ¼, N. W. ¼, 20—7—3.

Mrs. M. Christian N. E. ¼, N. W. ¼.

On this list D. C. Minor appears to have paid the taxes on the property assessed to him for 1897—that is to say, on the whole of the N. E. ¼ of section 20—and on a strip 20 rods wide on the east of the N. W. ¼; and T. J. Kellogg appears as having also paid his taxes for 1897, but upon property described as above, which did not belong to him, but to D. C. Minor, who paid the taxes on it as seen. Kellogg owned in fact 60 acres of land in the section. It was not the W. ¾, W. ½, of N. E. ¼, however, but the land which remained his after his sales to A. E. Minor, E. D. Minor, Mrs. Christian, and Robinson. Robinson paid his taxes for 1897 on the 40 acres he owned. Mrs. Christian paid her taxes for 1897 on the land she owned. A. E. Minor did not own any property at all in the section at that time. He never owned 80 acres in the west half of the N. W. ¼ of the section, and never sold or attempted to sell to D. C. Minor any property in the west half of the N. W. ¼. He was simply erroneously assessed for something which he did not own. Kellogg paid taxes on his 60 acres of land, though the description of the land on the roll was erroneously given. The entire taxes of 1897 upon the lands in the N. ½ of section 20, T. 7, R. 3 W., were in fact paid.

The only way to account for the assessment upon this additional quantity of land in the north half of section 20 is that some one in the assessor's office, noticing the description given in the act of sale from Eu-

gene Minor to A. E. Minor of the land sold to the latter, and not comparing the description therein with the recitals and the description of the same land in the act of sale from Kellogg to Eugene Minor, and not aware of the exact situation, assumed that the land sold was an independent sale to A. E. Minor of property in the extreme west of the section, which had not been anywhere assessed. A. E. Minor having no interest in the matter, and being, besides, an absentee, made no opposition to this assessment; and Kellogg, having paid his own taxes in full for that year, rightfully considered that he was no longer concerned in the matter of tax sales for the taxes of that year. The attempt of the tax collector to collect taxes erroneously supposed to be due on that property and by A. E. Minor was utterly without justification, and any adjudication made under such circumstances was absolutely null and void. The state having acquired no ownership under such an adjudication, if made to itself, could convey no title to another. Wilbert v. Michel, 42 La. Ann. 856, 8 South. 607; McWilliams v. Michel, 43 La. Ann. 990, 10 South. 11; Brown v. Land Co., 48 La. Ann. 1188, 20 South. 711.

The only interest the state had in these lands was as a quasi creditor to collect the taxes justly due upon it for 1897. She herself had no legal concern in the ownership of the properties, though it was her duty, in the interest of the owners, to assess them to the proper owners, and to proceed in the same interest in the enforcement of rightful taxes against the properties contradictorily with the actual owners. If all the taxes for 1897 due on the properties were paid, it did not concern her by whom they were paid. If any question should arise as to who paid the taxes on any particular tract, and how much, it was one to be raised and adjusted among the property owners themselves. If A. should have paid in full taxes for the year 1897 upon property belonging to B., and B. should have paid taxes for the same year on property belonging to A., that would not justify the state in revising or correcting the assessments as to the ownership of the two tracts, and claiming taxes a second time against either A. or B. or both; and still less could the state assess either of the properties in the name of a person owning neither of them, and by proceeding against this person, and having the property adjudicated to itself, to obtain title and cut off that of the actual owners; and this is what occurred in this matter before us. The deed to the Lyonses declares that they paid $12 for the property which was sold to them by the state. If this be so, then the state received $12 for taxes which no one owed, and for which no property was liable. The defendants will have to recover the money back from the state as money unduly received by it.

Defendants claim that they have been placed, under order of court, in the actual possession of the property claimed by and owned by Kellogg in this suit, and which they contend was covered by the adjudication to them. But this claim is without foundation. The plaintiff has always had actual possession of the property claimed in this suit. The defendants attempted to establish a claim to having placed themselves in possession of property through a proceeding of some kind in the district court for Calcasieu parish, but the record of that proceeding has been lost, and precisely what was done does not appear. Enough is shown in the record to establish the fact that they were not put in possession of any property in section 20, T. 7 S., R. 3 W. It is claimed that A. F. Lyons accompanied a deputy sheriff, who held in his possession an order of court directing him to place these parties in possession of the property in question; that they inquired from a woman friend at a house on the property for a Mr. Tupper; that they were told he was absent; that they went some five miles in search of him, and, finding him, informed him that the object of their seeking him was to place defendants in possession of the property; that an arrangement was then made between A. F. Lyons and Tupper, by which the latter entered into a lease of the property from the defendants. Otis Tupper was occupying at that time as owner a half-acre tract of land, which he had purchased from Kellogg. He testified as a witness that no demand was made upon him for possession, and he gave none. It is evident that the Tupper referred to was some other person of that name, who is not shown to have ever been in possession of the property, and who, if he consented to lease it from Lyons, never went into possession

under the lease, and Lyons was never put into possession.

We are of the opinion that the judgment of the district court is correct, and it is hereby affirmed.