CONOVER et al. v. ALLISON et al.

No. 1798.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1938.

Ellis Barnes and Tinsley Gilmer, both of Lake Charles, John H. Benckenstein, of Beaumont, Tex., and Richard A. Anderson, of Lake Charles, for appellants.

Liskow & Lewis, of Lake Charles, for appellees.

OTT, Judge.

This suit involves the validity of a tax title dated May 16, 1925, covering the E. ½ of S. W. ¼ of N. W. ¼, Sec. 3, T. 8 S, R. 10 W., in Calcasieu parish. The said property was sold by the sheriff of said parish to J. H. Mathieu for the taxes of 1924, assessed in the name of J. K. Perkins. The tax purchaser sold the property to the present plaintiffs on June 1, 1936, for a consideration of $1,200. Plaintiffs allege the regularity of the tax sale and the validity and incontestability of their title to the property by reason of the prescription provided for in article 10, § 11, of the Constitution, as amended, see Act. No. 4 of 1927, Ex.Sess.

Plaintiffs are asking that they be recognized as the owners of said property, and that a certain oil, gas, and mineral lease on said property and a certain sale of the mineral rights thereon made by defendant, Mrs. Allison, to S. P. Benckenstein in 1936, be canceled and erased from the records of the parish; that an assignment

made by said Benckenstein to the Humble Oil & Refining Company of said mineral lease from Mrs. Allison be set aside and canceled; and that certain royalty and mineral sales made by said Benckenstein to three other persons be likewise canceled and erased from the records of the parish. All of the parties holding and claiming mineral rights on the property from or through Mrs. Allison are made parties defendant with her, and all defendants have filed practically the same answer, in which the validity of the tax sale through which plaintiffs claim is attacked and alleged to be null and void.

The trial court rendered judgment in favor of plaintiffs recognizing them as the owners of said land, and decreeing the lease and sale from Mrs. Allison to Benckenstein, and the assignment and sale made by him to the other defendants, to be null and void, and ordering said instruments canceled and erased from the records of the parish. From this judgment all defendants have appealed.

The case was tried on an agreed statement of facts. The issues in the case are somewhat involved, but we will endeavor to give a brief statement of them as they appear from the pleadings and the agreed statement of facts.

In May, 1923, a judgment was rendered in the succession of Mrs. Delphine Perkins, deceased wife of J. K. Perkins, in which the surviving husband and the ten major children of the deceased, issue of her marriage with said J. K. Perkins, were recognized as owners and put in possession of several tracts of land, including that involved in this suit, located in the parishes of Calcasieu and Beauregard, in the proportion of an undivided one-half to the surviving husband and one-twentieth to each of the children. The defendant, Mrs. Ernestine Perkins Allison, was one of the children and heirs. Some four months after the rendition of this judgment, the co-owners executed an act of partition in which they declared that they were co-owners of the property as set forth in said judgment, and, desiring to partition same, they proceeded to allot to each co-owner certain specified tracts; Mrs. Allison receiving 110 acres in Calcasieu parish, including the twenty acres in controversy. The only tract in section 3 allotted to Mrs. Allison in the partition was the property here in controversy; that is, the E. ½ of S. W. ¼ of N. W. ¼.

Another coheir, Mrs. Odelia Alston, received, among other property, the S. W. ¼ of N. E. ¼ in section 3.

The act of partition was recorded in the conveyance records of Calcasieu parish, but, through an error of the recorder, the property allotted to Mrs. Allison in section 3 was described as the E. ½ of S. W. ¼ of N. E. ¼; that is, the quarter section was given as N. E. ¼ instead of N. W. ¼. As Mrs. Alston was allotted all of the S. W. ¼ of N. E. ¼ of this section, it is obvious that, as erroneously recorded, the act of partition appeared to give the E. ½ of S. W. ¼ of N. E. ¼ to both Mrs. Alston and Mrs. Allison, with no disposition whatever made of the land in suit, the E. ½ of S. W. ¼ of N. W. ¼. The original act of partition was withdrawn from the recorder's office in Calcasieu parish in order to be recorded in Beauregard parish, on March 31, 1924, and this original act remains on file in Beauregard parish.

In making up the assessments for the year 1924, the assessor, in describing the property of Mrs. Allison, listed it as 110 acres, assessed at $550, and described her property as it appeared on the records; that is, the property in section 3 was described as the E. ½ of S. W. ¼ of N. E. ¼ instead of E. ½ of S. W. ¼ of N. W. ¼, as it should have been described, Mrs. Allison did not return her property for assessment for that year.

For that year, the assessor assessed Mrs. Alston with the W. ½ of S. W. ¼ of N. E. ¼ of section 3, instead of all of said S. W. ¼ of N. E. ¼ which should have been assessed to her as she owned the whole forty, and not merely the west half. The E. ½ of S. W. ¼ of N. W. ¼ of section 3 was assessed to J. K. Perkins, Sr., for the year 1924, along with other property, although this twenty acres was not owned by J. K. Perkins, as it had been included in the partition the previous year, and had been allotted to Mrs. Allison in the original act of partition.

In December, 1924, Mrs. Allison paid all of the taxes on the 110 acres of land with which she had been assessed in the parish of Calcasieu. She owned no more than 110 acres in this parish, all of which she had acquired in the partition. She owned only 20 acres in section 3.

J. K. Perkins, Sr., did not pay the taxes on the E. ½ of S. W. ¼ of N. W. ¼ of section 3, which had been assessed to him

along with other property for the year 1924, and the sheriff sold this tract at tax sale in May, 1925, under the assessment in the name of J. K. Perkins, Sr.; J. A. Mathieu becoming the purchaser. It is this tax title under which plaintiffs claim ownership of this twenty-acre tract. It is admitted that the property in controversy has not been in the actual possession of any of the parties to the suit.

Plaintiffs rely on the prescription or peremption provided in article 10, § 11, of the Constitution, as amended, to cure and perfect their tax title against any and all defects and irregularities, as more than ten years have elapsed since the sale. They also plead an estoppel against all defendants to urge any invalidity against their tax title on the ground that Mrs. Allison did not assert title to the property in suit at any time since the act of partition, but, on the contrary, asserted title to and claimed ownership of the E. ½ of S. W. ¼ of N. E. ¼ of section 3, as the act of partition was recorded by the recorder, by selling said last-mentioned tract and reacquiring it by the same description; and also by permitting the property in dispute to be assessed to and the taxes to be paid by said tax purchaser from 1925 to 1936. The trial court sustained both the plea of prescription and the plea of estoppel.

■ If the payment by Mrs. Allison of her taxes on 110 acres of land in Calcasieu parish for the year 1924 included the payment of the taxes on the 20 acres in dispute and as described in the original act of partition, it follows that the assessment and sale of this 20 acres in the name of J. K. Perkins, Sr., for that year would be a nullity, and the prescription or peremption provided by the Constitution could not validate the sale. Bernstine v. Leeper et al., 118 La. 1098, 43 So. 889. In order to determine the effect to be given the payment by Mrs. Allison of the taxes on 110 acres of land with which she was assessed, the situation must be viewed in the light of conditions as they existed in 1924. At least three vital considerations must be given effect in discussing the situation as it then existed.

■ In the first place, Mrs. Allison paid taxes for that year on exactly the number of acres of land that she had acquired in the partition, and this was all the land that she owned in the parish. It follows from this circumstance that she intended to pay the taxes on her property in that parish and not on the property of her sister, Mrs. Alston. All of the property was described by governmental subdivisions, and the acreage with which Mrs. Allison was assessed corresponded exactly with the number of acres which she acquired in the partition.

In the second place, Mrs. Alston should have been assessed with all of N. W. ¼ of N. E. ¼ of section 3, as she was the record owner of this forty. If the assessor followed the record of the partition in assessing Mrs. Allison with the east half of this forty, there is no reason why he should not also have assessed Mrs. Alston with the whole forty, in which case there would have been a clear duplication in the assessment of the east half. If the assessor was so meticulous in following the record in the one case, there is no reason why he should not be charged with the same meticulous care in following the record in the other. If he had done so, Mrs. Alston would have been required to pay taxes on the property that she owned as shown by the records, and in that case there would have been no difficulty in imputing the payment by Mrs. Allison of her taxes on all the property she actually owned in the parish. She cannot be held responsible for the failure of the assessor to assess Mrs. Alston with property which the record showed that she owned.

And in the third place, the act of partition as recorded showed on its face that all of the land owned by the parties in indivision, including the land in controversy, was divided and partitioned, and this recorded act of partition showed that J. K. Perkins, Sr., did not acquire this twenty acres here in dispute with which he was assessed in 1924, and under which assessment the tax sale here involved was made. The record did not show that J. K. Perkins, Sr., owned this twenty acres any more than it showed that the other co-owners owned it. Consequently, it cannot be said that this twenty acres was assessed and sold in the name of the record owner, and, certainly, it was not assessed and sold in the name of the real owner.

■ Our conclusion is that the payment by Mrs. Allison of the taxes on all the property which she owned in Calcasieu parish in 1924, being 110 acres, operated as a payment by her of the taxes on the property here in dispute assessed and sold for the taxes of that year in the name of one who was not the owner. The mere

fact that she paid the taxes on part of her property which was incorrectly described as being in a different quarter of the section in which her property was actually located, could not affect the fact that she paid the taxes for that year on all the property owned by her in the parish. Verdine et al. v. Carter et al., 170 La. 226, 127 So. 609; Kellogg v. McFatter, 111 La. 1037, 1038, 36 So. 112; Page v. Kidd, Chaffraix, Intervenor, 121 La. 1, 46 So. 35.

The last of the above-cited cases has peculiar application here. In that case the court made the following statement on a set of facts not materially different from the situation here: "The assessor is expected to describe the property. He is supposed to familiarize himself with areas and boundaries, and, after examination of the record, to properly assess the property of taxpayers. After this has been done, the owner who is in good faith is warranted in taking it for granted that the assessment had been properly made, and in paying the taxes is naturally led to believe that he has paid on the whole property, even though there may be error in the description of the assessment, which is seldom indorsed on the tax receipt. If the description in fact is erroneous, and is not strictly within the boundaries, owing to the error, he nevertheless pays for that which he has a right to assume is the whole area, particularly if the amount on which he pays corresponds to the assessed value of the land, he cannot be made to lose his land."

■ As the tax sale was null for the reasons stated above, plaintiffs cannot now give life and effect to an invalid deed by urging against the owners a plea of estoppel. The rights of plaintiffs and their author in title must be judged from the situation as it existed in 1924 when the invalid sale was made; if the tax purchaser acquired no title then to the property, neither he nor his vendees could acquire any by urging the plea of estoppel.

■ Moreover, there is nothing to show that plaintiffs and their author in title have been misled by anything said or done by Mrs. Allison. The latter was not aware of the error in the description of her property, and, so far as the record shows, she knew nothing of the sale of her property for the taxes of 1924. She had paid all of her taxes for that year, and had no reason to believe that some of her property would be sold for taxes.

■ It is true that Mrs. Allison transferred to a third person in 1926 all the property which she had acquired in the partition, and reacquired the property in 1930, and that in both transfers the twenty acres was incorrectly described in the same way as the act of partition was incorrectly recorded. But it does not appear that Mrs. Allison was then aware of this error in the description. It must be presumed that she intended to sell the property that she actually owned, as it is not to be presumed that she intended to commit a fraud by selling property that she did not own. Waller v. Colvin et al., 151 La. 765, 92 So. 328. So far as the record shows, she did not discover the error in the description of the property until the year 1936, when she executed a deed correcting the erroneous recordation of the original act of partition. Neither plaintiffs nor their author in title were parties to the acts by which Mrs. Allison sold and reacquired the property by an erroneous description. Their course of action does not appear to have been affected in the least by these transfers, as it does not appear that they would have taken any different course relative to the property than they have taken had Mrs. Allison never executed the acts of transfer and reacquisition.

We think the plea of estoppel is without merit. The conclusion that we have reached necessitates a reversal of the judgment.

For the reasons assigned, it is ordered that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the suit of the plaintiffs be dismissed, and their demands rejected; that there be judgment in favor of the defendants and against the plaintiffs, annulling and setting aside the tax deed by the sheriff and tax collector of Calcasieu parish to J. H. Mathieu, dated May 16, 1925, and recorded on May 26, 1925, in the conveyance records of Calcasieu parish, in Conveyance Book 209, page 118, and that said deed be decreed null and void and of no effect; that plaintiffs be decreed to have acquired no right or title to the property described in said tax deed by reason of the sale by said tax purchaser to them on June 1, 1936, under deed recorded in Conveyance

Book 288, page 164, of the conveyance records of Calcasieu parish.

It is further ordered that plaintiffs pay all cost of the suit in both courts.