200 So. 455

CHAPMAN–STORM LUMBER CO., Inc., et al. v. BOARD OF COM'RS FOR ATCHAFALAYA BASIN LEVEE DIST. et al.

No. 35888.

Feb. 3, 1941.

Ferd C. Claiborne, of New Roads, A. Giffen Levy, of New ·Orleans, Paul B. Landry, Jr., of Port Allen, and Leander H. Perez, of New Orleans, for appellants.

Milling, Godchaux, Saal & Milling and Hunter C. Leake, II, all of New Orleans, and Brumby & Bauer, of Franklin, for appellees.

FOURNET, Justice.

Plaintiffs, the Chapman-Storm Lumber Company, Inc., and the Norman-Breaux Lumber Company, Inc., instituted these proceedings seeking to be recognized as the owners, in the proportion of an undivided half interest each, of the W½ of the NW¼ of Section 18, the NE¼ of Section 33, and the W½ of the NW¼ of Section 34, all located in the 14th Township South of Range 12 East, St. Martin Parish, Louisiana, containing approximately 320 acres; and to have the following acts, in so far

as they form a cloud on their title to this property, declared null: (1) Adjudications of the property to the State of Louisiana for unpaid taxes for the year 1909; (2) the state's transfer of the property to the defendant Board of Commissioners for the Atchafalaya Basin Levee District; and (3) the mineral lease executed by the latter in favor of the defendant Creole Oil Company, Inc.

In their answer the defendants assert the validity of the tax sales sought to be annulled, the transfer of the land by the state to the defendant Board of Commissioners, and the subsequent grant of a mineral lease affecting the said land by the Board of Commissioners to its co-defendant, the Creole Oil Company, Inc. They further plead the prescription of 10 years acquirendi causa under the provisions of Article 3478 of the Revised Civil Code, the prescription of 6 years under Act No. 62 of 1912, and the curative effect of Act No. 316 of 1926.

There was judgment in the lower court in favor of plaintiffs as prayed for, and the defendants have appealed.

Plaintiffs allege in their petition, in which they are borne out by the record, that they deraigned their title, in the proportion of an undivided half interest each, from a common ancestor, the George Vinson Shingle & Mfg. Company, Ltd., which was, in the year 1909, the record owner of 1,880 acres of land in St. Martin Parish, including the land in controversy; that the George Vinson Shingle & Mfg. Company, Ltd., was assessed in the year 1909 on 1,880 acres of land and paid the taxes thereon accordingly, but, that, in assessing the property, the as-

sessor erroneously described (1) the W½ of the NW¼ of Section 18 as being in the *11th* Range East instead of in the *12th* Range East, (2) the land located in Section 33 as being the N½ thereof instead of the NE¼ thereof, and (3) the land located in Section 34 as being the W½ of the NE¼ thereof, instead of the W½ of NW¼ of the said section; that one M. Coguenheim, the original patentee of the W½ of the NW¼ of Section 18, and Henry Gibbon, the original patentee of the NE¼ of Section 33 and the W½ of the NW¼ of Section 34, were assessed with these respective properties on a supplemental assessment roll for the year 1909 although they had long since disposed of their interest in and title to these properties, and that the properties were adjudicated to the State of Louisiana on May 28, 1910, because of the failure of these original patentees to pay the taxes erroneously assessed against them in the supplemental roll; that the George Vinson Shingle & Mfg. Company, Ltd., was assessed for the entire 1,880 acres owned by it in St. Martin Parish (which includes the 320 acres in controversy here) under correct description in 1908, the year previous to that for which the property was sold for nonpayment of the taxes assessed against Gibbon and Coguenheim, as well as in 1910, the year following, and that in all subsequent years, including 1937, the year these proceedings were instituted, it had likewise been assessed to the George Vinson Shingle & Mfg. Company, Ltd., or its successors in title under correct description; that on November 11, 1911, the property was transferred by the State of Louisiana to the Board of Commissioners for the

Atchafalaya Basin Levee District under the provisions of Act No. 97 of 1890; and that on April 1, 1937, the latter executed a mineral, oil, and gas lease affecting this property in favor of the defendant Creole Oil Company, Inc.

Plaintiffs base their action to set aside the tax sale on the grounds of dual assessment and prior payment of taxes. On the other hand, the defendants contend "it is clear from the documentary evidence introduced by plaintiffs that in the year 1909 plaintiffs' author in title was not assessed with the land herein involved and that the persons actually assessed by specific descriptions with the land herein involved did not pay the taxes on said property."

Under the express provisions of the Constitution of 1898 (the constitution in force at the time this property was adjudicated to the state), sales for the payment of taxes could not be set aside after the expiration of the three year prescriptive period therein provided for any çause whatsoever "except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale * * *." Article 233. This article was reproduced in the Constitution of 1913 under the same number and in practically identical words. In the Constitution of 1921 the clause with reference to dual assessments was deleted but the provision with reference to the prior payment of taxes was retained. Section 11 of Article 10. A tax sale of property upon which the taxes have .already been paid is an absolute nullity, not curable by the prescriptive period provided for in the

constitution. Wilbert v. Michel, 42 La. Ann. 853, 8 So. 607; Lefebre v. Negrotto, 44 La.Ann. 792, 11 So. 91; Brown v. Pontchartrain Land Company, 48 La.Ann. 1188, 20 So. 711; Kellogg v. McFatter, 111 La. 1037, 36 So. 112; Booksh v. A. Wilbert Sons Lumber & Shingle Company, 115 La. 351, 39 So. 9; Bernstine v. Leeper, 118 La. 1098, 43 So. 889; Verdine v. Carter, 170 La. 226, 127 So. 609; Uthoff v. Thompson, 176 La. 599, 146 So. 161; and Conover v. Allison, La.App., 178 So. 756, 758. The fact that the owner's property was erroneously described on the assessment roll is immaterial if he can show that he had, prior to the adjudication, paid the taxes on all of the property he owned for the year for which it was sold. Bernstine v. Leeper, Verdine v. Carter, and Conover v. Allison, all supra.

In the Conover case the Court of Appeal for the First Circuit held "* * * that the payment by Mrs. Allison of the taxes on all the property which she owned in Calcasieu parish in 1924, being 110 acres operated as a payment by her of the taxes on the property * * * in dispute assessed and sold for the taxes of that year in the name of one who was not the owner. *The mere fact that she paid the taxes on part of her property which was incorrectly described as being in a different quarter of the section in which her property was actually located, could not affect the fact that she paid the taxes for that year on all the property owned by her in the parish.*" (Italics ours.) The court cited as authority for their holding the cases of Verdine v. Carter, Kellogg v. Mc-

Fatter (cited above), and the case of Page v. Kidd, Chaffraix, Intervenor, 121 La. 1, 46 So. 35, 36.

In the Chaffraix case this court said: "The assessor is expected to describe the property. He is supposed to familiarize himself with areas and boundaries, and, after examination of the record, to properly assess the property of taxpayers. After this has been done, the owner who is in good faith is warranted in taking it for granted that the assessment has been properly made, and in paying the taxes is naturally led to believe that he has paid on the whole property, even though there may be error in the description of the assessment, which is seldom indorsed on the tax receipt. *If the description in fact is erroneous, and is not strictly within the boundaries, owing to the error, he nevertheless pays for that which he has a right to assume is the whole area, particularly if the amount on which he pays corresponds to the assessed value of the land, he cannot be made to lose his land.*" (Italics ours.)

We had occasion to review the decision of the Court of Appeal in the case of Conover v. Allison on the application of the Conovers for a writ of certiorari which was based substantially on the same grounds being urged by the defendants in this case, and we refused the application, assigning as our reason therefor that the judgment was correct.

However, counsel for defendants argued orally in this court that since there is no allegation in plaintiffs' petition to the effect that the 1,880 acres assessed for the

year 1909 in the name of the George Vinson Shingle & Mfg. Company, Ltd., who paid the taxes accordingly, constituted all of the property then owned by it in St. Martin Parish, the testimony and evidence introduced by plaintiffs, over defendants' objection, to show that the 1,880 acres was all of the property so owned by plaintiffs' ancestor in title at that time was inadmissible because it was ultra petitionem and prejudicial to their rights, and should not have been considered by the judge of the lower court in arriving at his decision.

The record shows the plaintiffs in their petition alleged that in the year 1909 their ancestor in title "was the owner of record of 1,880 acres of land in St. Martin Parish, including the W. ½ of the N.W. ¼ Section 18, the N.E. ¼ of Section 33, and the W. ½ of the N.W. ¼ of Section 34, T. 14 S. R. 12 E."—the land in controversy here. They also alleged they paid the taxes for the year 1909 on the entire 1,880 acres under the erroneous description as hereinabove pointed out. On the day of the trial of the case plaintiffs sought to show by the testimony of a deputy clerk of court who had made an examination of the conveyance records of St. Martin Parish that the only property owned by the George Vinson Shingle & Mfg. Company, Ltd., in 1909 was the 1,880 acres alleged to be owned by it in plaintiffs' petition. In connection with the testimony of this witness a certificate which had been prepared by him showing his findings was sought to be introduced, and, while defendants' counsel did object to the introduction of this certificate on a number of grounds, one being "that the

matters and things set forth in the certificate are irrelevant to the issues of the case," they did not then urge the testimony and documents sought to be introduced were ultra petitionem. The evidence and testimony were admitted and referred to the merits.

■ "The rule that the proof must correspond with, and be confined to, the issues raised by the pleadings does not contemplate that the allegations in the pleadings shall be in precise language. *The allegations must be sufficient to apprise the adverse party of the nature of the evidence to be introduced, but the rule is satisfied if the allegations fairly indicate the facts sought to be proved.* Evidence in support of an issue is not to be excluded merely because the allegations presenting the issue are general rather than specific, or merely because they are to some extent incomplete, or vague and uncertain. * * * Evidence is not inadmissible because it goes beyond or falls short of an allegation in the pleading, if it includes a part or all of such allegation." 49 Corpus Juris 796, § 1174. (Italics ours.) Furthermore, "Failure to object to evidence upon the ground of variance between it and the allegations of his adversary's pleadings has been asserted to be the best possible evidence that the variance did not mislead him to his prejudice." 49 Corpus Juris 812, § 1191.

■ The defendants are not arguing or contending they were taken by surprise, prejudiced, or that if given an opportunity they could show plaintiffs' ancestor in title did in fact own property in St. Martin Parish in 1909 other than the 1,880 acres with which they were assessed. They have done no more than argue orally before this court that the evidence and testimony introduced in the lower court should not be considered because plaintiffs' petition lacks the necessary allegation.

While it is true that plaintiffs did not in their petition use the word "only" in specifying that the land owned by their ancestor in title in St. Martin Parish was the 1,880 acres referred to in the petition, nevertheless, our appreciation of their allegations is that they were sufficient to place the defendants on their guard that the ownership of the George Vinson Shingle & Mfg. Company, Ltd., would be proved to be limited to the 1,880 acres specifically described, and they were not, therefore, prejudiced by the introduction of such evidence and testimony.

■ We therefore conclude that the taxes for the year 1909 having been paid by the George Vinson Shingle & Mfg. Company, Ltd., on all of the property owned by it in St. Martin Parish, which includes the property in controversy, the sheriff's adjudication to the state of the portion thereof that was erroneously assessed in the name of other parties not then the owners of the property, was null and void. It necessarily follows that the state acquired no ownership whatsoever under such adjudication and it could not, therefore, have transferred any to the Board of Commissioners for the Atchafalaya Basin Levee District. Wilbert v. Michel, 42 La. Ann. 853, 8 So. 607; and Kellogg v. Mc-Fatter, 111 La. 1037, 36 So. 112.

■ The next question presented for our consideration is defendants' plea of prescription of ten years acquirendi causa.

Defendants claim that because Act No. 97 of 1890, under which the Board of Commissioners of the Atchafalaya Basin Levee District was created and the property transferred to it by the state, provides that "when said conveyances are * * * recorded the title to said land, *with the possession thereof,* shall, from thenceforth vest absolutely in said Board * * *" (Italics ours) it is evident the legislature intended not only to give the levee board a deed translative of title, but, by the same token, to vest it with a fictitious physical possession of the property not subject to inquiry after ten years' time under Article 3478 of the Revised Civil Code.

This contention is, of course, untenable for the very basis of the prescription whereby one acquires an immovable in good faith and under just title according to the provisions of Article 3478 is that he must "have held the thing in fact and right as owner" and that this possession must "have been continuous and uninterrupted, peaceable, public and unequivocal * * *." Article 3487. The long and unbroken line of jurisprudence under these articles is to the effect that this possession, in its commencement at least, must have been actual and corporeal. Kittridge v. Hebert, 9 La.Ann. 154; Wilson v. Marshall, 10 La.Ann. 327; and Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574. There is nothing in the act of 1890, either expressly or impliedly, that leads us to believe the legislature intended by its adoption to, in any way, abrogate the provisions of the Revised Civil Code which have, since the adoption of our first code, governed the method of acquiring immovables by the prescription of ten years in this state.

■ We now pass to the six year prescriptive period provided for in Act No. 62 of 1912, which is being urged by the defendants.

They contend this act cures any invalidity that might exist in a transfer from the state to the Board of Commissioners of the Atchafalaya Basin Levee District, even though the transfer was to the prejudice of persons holding under valid patents from the state, and is, consequently, applicable to the transfer in this case. To support their contention they rely principally on the cases of Atchafalaya Land Company v. F. B. Williams Cypress Company, Ltd., 146 La. 1047, 84 So. 351; State v. Sweet Lake Land & Oil Company, 164 La. 240, 113 So. 833; and Ballard Island Oil & Gas Company v. Douglas, 172 La. 385, 134 So. 257.

Act No. 62 of 1912 is an act "prescribing [that] the time within which suits or proceedings may be instituted by the State of Louisiana, private corporations, partnerships or persons for the purpose of vacating and annulling any patent issued by the State of Louisiana, signed by the Governor of the State and by the Register of the State Land Office, or any transfer of property by any subdivision of the State" is limited to six years. (Brackets ours.) This act has been interpreted by this court and the federal courts on a number of

occasions, all of which, with the exception of two cases in which a *transfer* of land by the state was involved, dealt with a *patent* in its true sense. The two cases in which transfers by the state were under consideration and not patents are State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, and Lovell v. Dulac Cypress Company, Ltd., D.C., 31 F.Supp. 919.

In the former case [161 La. 1039, 109 So. 832], the court held that the state registrar and auditor, against whom mandamus proceedings were instituted by the Board of Commissioners of the Tensas Levee District to compel the transfer of state lands to the board in confirmation of the grant of these lands by the act creating the board, could not plead the prescription provided for in Act No. 62 of 1912 against relator's demand because *"The prescription provided by the act relates to suits to annul patents, and hence the plea has no pertinency * * *."* (Italics ours.)

In the latter case [31 F.Supp. 922], the Federal District Court for the Eastern District of Louisiana held that "Act No. 62 of 1912 applies to matters involving attacks on patents issued by a governmental agency; *there being no patent at issue in this case, the prescription of 6 years provided for in the statute, and pleaded by defendants, cannot be maintained."* (Italics ours.)

As a matter of fact, the very act creating the Board of Commissioners of the Atchafalaya Basin Levee District, upon which it depends for its title to the property in controversy (Act No. 97 of 1890), presupposes that the state has valid title to the lands therein granted for, in Section 11, it is provided that "* * * *all lands now belonging, or that may hereafter belong to the State of Louisiana,* and embraced within the limits of the levee district as herein constituted, *shall be, and the same hereby are given, granted bargained, donated, conveyed and delivered unto said Board * * *."* (Italics ours.)

None of the cases relied on by defendants sustain their plea of six years' prescription because the validity of the state's title to land was not at issue in any of them, as the following analyses disclose, and they do not, therefore, control the issues here involved.

In the case of State v. Sweet Lake Land & Oil Company, the contest was between the state and the transferee of the state's patentee to recover the bed of Sweet Lake on the ground that the patents issued by the state were null ab initio for the reasons, (1) that Sweet Lake being a navigable stream, its bed was not susceptible of private ownership, and (2) in the alternative, that should the lake be found to be non-navigable, the patents issued by the state were null because the bed of the lake had not been surveyed by the state as required by Act No. 247 of 1855 and the lake bed was sold for less than $1.25 an acre, in violation of the provisions of the same act. The court found as a matter of fact that Sweet Lake was not a navigable stream and concluded that the state's patents, being valid on their face, could not be questioned in an action against the in-

nocent transferees from the original patentees.

In the case of Atchafalaya Land Company v. F. B. Williams Cypress Company, Ltd., patents issued by the state to third parties, covering certain land lying within the area embraced by the Atchafalaya Basin Levee District and, as such, subject to be transferred to the Board of Commissioners by the state under the provisions of Section 11 of the Act of 1890 creating the levee district, were sought to be annulled. The court held that while these lands were subject to transfer to the board by the state, the patents were perfected under Act No. 62 of 1912 because the commissioners of the levee district had not, within six years following the granting of the patents to other parties, exercised their right by demanding that the state transfer the land to the board.

In the case of Ballard Island Oil & Gas Company v. Douglas, the Caddo Levee District, which had been granted the right to have certain lands conveyed to it by the state in the act which created the levee district, sold certain portions of the land so granted to third persons (through whom the plaintiff deraigned its title) without ever requesting a formal act of conveyance from the state. Many years later the state patented the same lands to defendant's author in title. The court held that because of the peculiar wording in the act creating the Caddo Levee District, plaintiff's title was valid under the decision in the case of Ellerbe v. Grace, 162 La. 846, 111 So. 185.

The defendants also allege that the transfer by the state to the Board of Commissioners of the Atchafalaya Basin Levee District was cured by the effect of Act No. 316 of 1926, but they have apparently abandoned this argument since it is not mentioned in their brief and was not argued orally before this court.

█ They do contend in their brief, however, and seriously argue, that the levee board and the Creole Oil Company are both third persons who acquired their title on the faith of the public records and "are not bound or affected by matters and things not of public record," relying on the case of Bergeron v. Louisiana Land & Exploration Company, 5 Cir., 95 F.2d 47.

In that case the tax debtor's property was sold for taxes under an erroneous description. Subsequently, the tax debtor sold his property to a third person. Thereafter the purchaser at the tax sale brought suit against the purchaser from the tax debtor to have the title to the property corrected. The court held that the purchaser from the tax debtor was protected under the well settled rule that a purchaser of property has a right to rely on the faith of the public record, which showed the tax debtor to be the owner of the property purchased, and, further, that a suit to correct errors in instruments can only be maintained when the parties to the instruments containing the errors are before the court. It is obvious, therefore, that this case has no application to the issues involved in the case at bar.

█ Of course, the lessee can never have a better title than his lessor, and the

lease from the Board of Commissioners to the Creole Oil Company is, therefore, invalid. See the case of Tyson v. Spearman, 190 La. 871, 183 So. 201.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

O'NIELL, C. J., and LAND, J., take no part.