TATE, Judge.
This is a suit for personal injuries sustained by the customer of a supermarket when a heavily loaded “grocery buggy” fell upon her on the morning of October 8, 1953, outside the store. The defendant supermarket appeals from the award of the resulting damages in favor of the customer, Mrs. Gillis, and her husband. Plaintiffs seek increase of the award by answer to the appeal.
The uncontradicted facts show:
Mrs. Gillis and a friend, Mrs. Falgout, had each bought large quantities of groceries at defendant’s store prior to the accident. These purchases were bagged at the cashier’s desk and placed on two “grocery buggies”. The latter were steel, double-decked (i. e., two baskets, one on top of the other), hand-pushed vehicles used to transport the groceries bought, and were admittedly at the time heavily loaded with the ladies’ purchases.
Detiveaux, the only “bag boy” on duty that morning to take the bags of groceries sold from the store to the customers’ cars, pushed the two buggies along the sidewalk in front of the store towards the street east of the supermarket, across which Mrs. Gillis’ automobile was parked. He was preceded by Mrs. Gillis. Arriving at the curb of the sidewalk, he pulled one buggy down off the curb onto an inclined concrete slab (for parking purposes) which for 20 feet sloped downward until it met the street proper. Detiveaux turned back to pull the other buggy down off the curb, but before he could so do he heard Mrs. Gillis scream. He turned back and saw her on the ground with the heavily loaded buggy across her legs.
It is at this point that some conflict develops in the testimony.
Detiveaux’ version was that the other lady had also gone on ahead of him and was in front of Mrs. Gillis and himself, whereas both ladies insist that Mrs. Falgout was following Detiveaux while Mrs. Gillis preceded him. Further, Detiveaux testified that when he turned after Mrs. Gillis’ scream, she was lying at the very end of the concrete parking slab, partly in the street, that is approximately 20 feet from where he stood at the sidewalk. The chief importance of such latter testimony, if accepted, is that it would tend to support defendant’s factual theory that the accident probably resulted from Mrs. Gillis’ impatient effort to expedite her departure by *188 herself carelessly pulling the loaded grocery-buggy towards her car so as to cause it to fall upon her.
Contrariwise, both ladies testified positively that immediately after the accident, Mrs. Gillis lay as she had fallen approximately midway down the concrete slab. Both ladies further testified positively that Mrs. Gillis, ahead of Detiveaux, had stepped off the curb and was walking without pushing a buggy towards the car with her back toward Detiveaux while Detiveaux was pulling the buggies from off the sidewalk curbing onto the inclined slab in order to continue pushing same toward Mrs. Gillis’ car.
The District Court accepted the testimony of these ladies. It further found that Mrs. Gillis lay midway on, rather than at the end of, the parking slab immediately after the accident. The very swiftness within which Mrs. Gillis was struck following Detiveaux’ pulling the first loaded grocery buggy onto the sloping concrete slab, and the fact that Mrs. Gillis was a one-armed lady, are somewhat corroborative of the correctness of her version of the accident, as against defendant’s suppositions.
Having accepted as true the testimony that the accident occurred while Mrs. Gillis was walking down the incline with her back toward Detiveaux and the grocery buggies in his charge, when she was suddenly struck by one of these buggies, the District Court applied the doctrine of res ipsa loquitur and held that the defendant, not having exculpated itself from negligence, was liable in the premises.
Professor Wex Malone’s authoritative article, “Res Ipsa Loquitur and Proof by Inference — A Discussion of the Louisiana Cases”, 4 La.Law Review 70, summarizes the applicability of res ipsa loquitur as follows:
“It is commonly stated that two conditions must be met before the doctrine can apply. First, the accident must be one that ordinarily would not occur in the absence of negligence,” 4 La.Law Review 76. “A second requirement * * * is commonly said that res. ipsa loquitur is not available unless it is shown that the defendant was in exclusive control of the agency that caused the injury.” 4 La.Law Review 80.
When the inference of negligence-on the part of the defendant arises by reason of application of the doctrine of res-ipsa loquitur to a case, “the burden is then on the defendant to show absence of negligence on his- part.” Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395 at pages 396-397, or “to exculpate himself from negligence,” Saunders v. Walker, 229 La. 426, 86 So.2d 89, at page 93; Watkins v. Gulf Refining Company, 206 La. 942, 20 So.2d 273.
The very evidence by which defendant attempted to show that such loaded grocery buggies, properly placed on the slope in a locking position, or even unlocked if in good working order, could not have rolled so as to strike Mrs. Gillis, tends to show that the buggy would not have rolled down the incline and have struck Mrs. Gillis if it had been properly placed in locking position, or if it was in proper non-rolling condition.
The District Court properly found that the buggies were under the sole control of defendant’s employee immediately prior to the collision.
While Detiveaux did not see the buggy roll, nor did Mrs. Falgout who from her own position in back of Detiveaux saw Mrs. Gillis walking away from the latter down the slope one instant and the next instant heard Mrs. Gillis scream and saw her already knocked to the ground with the-buggy on top of her; nor did Mrs. Gillis, who had her back toward the buggy; we think that in the absence of exculpatory explanation defendant is liable under the doc *189 trine of res ipsa loquitur: for without negligence in handling or mechanism, the grocery buggy would not under the circumstances herein ordinarily roll down the slope and strike Mrs. Gillis. Defendant has not rebutted the inference or presumption of negligence raised by the facts as accepted by the District Court. See Spurlock v. Boyce-Harvey Machine, Inc., La.App. 1 Cir., 90 So.2d 417; Washington v. T. Smith & Son, La.App. Orleans, 68 So.2d 337.
Defendant urges that application of the doctrine of res ipsa loquitur should be unavailable to plaintiffs because the latters’ petition alleged certain negligent acts and omissions on the part of defendant, alternatively to an allegation invoking the aforesaid doctrine. The “doctrine” of res ipsa loquitur furnishes a rule of evidence, the applicability of which is to be determined at the conclusion of the trial. Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437; Gerald v. Standard Oil Co., 204 La. 690, 16 So.2d 233. This being so, very often the “doctrine” is pleaded in conjunction with allegations of specific negligence in the event that the proof at the trial does not admit of application of this doctrine, although nevertheless demonstrating the negligence of the defendant, see, e. g. the Gerald and Washington cases above cited.
Defendant’s further argument that proof that Mrs. Gillis fell at a different spot than that alleged in her petition was inadmissible is equally without merit. “Where the defendant is amply protected against ■ being surprised or misled, a variance between pleadings and proof, not affecting the gist of the action, is immaterial,” Fidelity & Deposit Co. v. Rednour, La.App. Orleans, 44 So.2d 215, 217. See Chapman-Storm Lumber Co., Inc. v. Board of Com’rs, 196 La. 1039, 200 So. 455. In tort suits, not being the substance of the cause of action but merely descriptive thereof, the correct date, Swedman v. Standard Oil, 12 La.App. 359, 125 So. 481, or spot, Johnson v. Canal and C. R. R. Co., 27 La.Ann. 53, of the accident may be proved despite variance with the allegations of the petition. (Of course, such variance may sometimes be significant in the trial court’s evaluation of the credibility of the witness.)
The District Court awarded $7,500 to Mrs. Gillis for her personal injuries and $901.63 to her husband for special damages suffered by the community as a result of the accident. Both parties want this award to be changed in their respective favors.
As a result of the blow to her leg, Mrs. Gillis suffered an injury to the peroneal nerve resulting in causalgia, a disability and injury described as most intense, painful and severe by her physicians. She described her pain as follows, Tr-84r “There was a burning, just a severe pain. It felt like when you burn your hand on the stove. There was a terrific pain day and' night, and I couldn’t get any relief from it.” Her physician described it as a severe and continuous burning pain, day and night, increasing in intensity and producing “very obvious changes in her appearance, as in any- person with pain, a drawn face, very tense, and exhausted, like someone who has not slept well,” Tr-142.
This pain persisted, with but temporary alleviations due to nerve blocks and drugs,, until finally on September 22, 1954, conservative treatment having failed, Mrs. Gillis underwent major surgery in the form' of a lumbar sympathetomy whereby the trunk of nerves to the affected leg and foot were cut after an incision was made on the right side of the spine in the back, covering one-third of the circumference of the body and requiring 22 exterior stitches. Following the operation, there was immediate relief from pain, although as a result thereof there will be a permanent and somewhat discomfortable numbness in the foot; Mrs. Gillis only suffers occasional pain now, mostly upon pressure upon or prolonged usage of the affected member- *190 Mrs. Gillis is also much more nervous now than before the accident.
We think the District Court’s award for pain and suffering and the apprehension connected with the situation, including the operation, to be neither manifestly excessive nor manifestly insufficient. See Druilhet v. Labiche, La.App. Orleans, 88 So.2d 60; Merchant v. Montgomery Ward & Company, Inc., La.App. 1 Cir., 83 So.2d 920; Wainwright v. Globe Indemnity Company, La.App. 2 Cir., 75 So.2d 554.
Defendant does not contest the special damages of $901.03 awarded Mr. Gillis for medical expenses, etc. Plaintiffs seek to have the awarded medical fee for the operating physician raised to the $1,000 which the evidence shows to be the actual cost thereof; however, the District Court restricted it to the $500 requested by plaintiff’s petition. Nor do we find erroneous the District Court’s disallowance of the alleged expenses of the trips for the medical treatments to New Orleans in view of the vague and uncorroborated proof thereof.
Defendant urges that the $350 for the medical expert witness fee awarded Dr. Cenac should be reduced. However, the evidence shows that this busy physician was required not only to testify at length during the trial of the matter, but was subjected to a lengthy discovery deposition taken under cross-examination by the defendant, and in view of the exceptional amount of time and preparation given to serve the court and the parties as an expert witness, we are unable to hold that the District Court abused its discretion in fixing the fee. Succession of Moody, 229 La. 30, 85 So.2d 20. See Recreation and Park Commission, etc. v. Perkins, 231 La. 869, 93 So.2d 198.
For the above and foregoing reasons, the judgment appealed from is affirmed.
Affirmed.