LAND, J.
This is an action of jactitation, or suit for slander of title; plaintiff claiming ownership and possession of two-thirds of a tract of land containing 352.50 acres, alleged to be situated in the parish of Iberville. Defendant, for answer, claimed ownership and possession of 200 acres of the same tract, alleged to be in the parish of West Baton Rouge, and set up its title, derived through mesne conveyances from a tax adjudication to the state of Louisiana made in 1886. In support of this tax sale, defendant pleaded the curative prescription of 3 years, provided hy article 233 of the Constitution of 1898, and also the prescription of 10 years acquirendi causa. The defendant prayed that the demand of plaintiff be rejected, that its vendor be called in warranty, and, in the event that its title be annulled, for judgment against *190 its warrantor. This call does not appear to have been served or answered.
Plaintiff, in his turn, called the Citizens’ Bank of Louisiana in warranty. The bank answered the call, averring that it sold without warranty as to area, extent, or boundaries, and without recourse for any deficiency therein. The bank, further answering, set up that the state of Louisiana acquired the lands by forfeiture for nonpayment of taxes in the parish of West Baton Rouge, under an assessment against Henry St. Ges, who was not the owner thereof, and under an erroneous description and statement of acreage; that there was no notice to the real owner; that there was a dual assessment of said property in the parish of Iberville, where the property had been regularly assessed and the taxes thereon regularly paid for a number of years; that at the time of the pretended forfeiture to the state no taxes were due on the property, the same having been paid in full by the respondent in the parish of Iberville, where the property had always been assessed. Warrantor further pleaded the prescription of 10 and 30 years.
There was judgment in favor of the defendant, recognizing it as the owner of the lower two-thirds of lot or section 10, township 8, range 11 E., “commencing at 40 arpents from Bayou Grosse Tete, and running back to the 80-arpent line, and containing 110 acres, more or less.” There was also judgment in favor of the plaintiff on his call in warranty against the Citizens’ Bank.
Plaintiff and the bank have appealed.
Lot or section 10 was purchased by Valery Badeau from the state of Louisiana in the year 1856. This entry appears in the “Abstract of Entries from State Land Office, Parish of Iberville,” recorded in said parish. In the same year, 1856, Valery Badeau sold section 10 to Pierre Badeau, describing the tract “as situated in the parish of Iberville on the east side of Bayou Grosse T§te.” In 1874 Pierre Badeau sold the tract under the same description to one Bargas. In 1S80 section 10 was sold at probate sale as situated in the parish of Iberville, and was purchased by Antoine Carriere, who in the same year conveyed the property to Henry St. Ges, who, on February 16, 1885, sold to the Citizens’ Bank, which, in February, 1888, sold to Geo. W. Booksh, plaintiff herein. All of the above titles described the section as situated in the parish of Iberville.
It is an undisputed fact that this tract of land has been for years regularly assessed in the parish of Iberville, and the taxes thereon regularly paid by the owners.
In the year 1885 the assessor of the parish of West Baton Rouge assessed, in the name of Henry St. Ges, nonresident, “200 acres, being Frac, section 10, T. 8, R. 11 B.” On June 5, 1886, the property so assessed was adjudicated to the state for want of bidders for $9.43, representing state tax, district levee tax, parish taxes, and costs.
In 1885, 1886, and 1887, the whole of section 10 was assessed in the parish of Iberville to the Citizens’ Bank, and all the taxes due thereon, state, district, levee, and parish, were paid in full.
In December, 1891, said fraction of section was transferred and conveyed by the auditor to the Atchafalaya Basin Levee District as having been adjudicated to the state and not redeemed.
There are several serious grounds of nullity urged against the tax adjudication of 1885.
Plaintiff contends that the whole of section 10 is situated in the parish of Iberville. That this was the common understanding down to the year 1885 is unquestionable.
Neither of the two interested parishes have taken any action to fix the boundary line between them. The question has been raised by the state assessor of the parish of West Baton Rouge, who undertook on his own mo? tion to settle the question of boundary by listing portions of certain tracts as being *191 situated in said parish. On the other hand, the state assessor of the parish of Iberville has continued to assess the whole of said tracts as being within the limits of the parish of Iberville.
The state and levee district have no interest in the question of boundary line, which concern only the fisc of the two parishes. It would seem that the provisions of section 2624 of the Revised Statutes of 1870, relative to the fixing of boundary lines of any parish, as ample, if resorted to, to settle the question for all time. Counsel for defendant concedes that, according to the “Powell line” of 1828, “the land in dispute was included in the territory of Iberville,” but contends that, under Act No. 14, p. 16, of 1859, the line was changed, so as to run at a uniform distance of 40 arpents from Bayou Grosse TSte. The act of 1859 was a referendum, and counsel admits there is no evidence in the record that the election was held in conformity with its provisions and was unfavorable to the parish of Iberville. But the briefs of opposing counsel conceded that “the election was held and resulted in favor of the parish of Iberville.”
Section 7 of Act No. 14, p. 17, of 1859, reads as follows:
“That if, upon ascertaining the result of said election, it be found that a majority of the legal voters of said disputed territory should have voted for Iberville, then said disputed territory shall be and remain in the parish of Iberville, and the western boundary of the parish of West Baton Rouge shall be permanently fixed at forty arpents distance from the Bayou Gross Tete.”
There is no evidence to show that the fraction of section 10 now in controversy was included in the “disputed territory” referred to in the act of 1859.
The parish surveyor testified as follows:
“I know of no means of determining what lands were in dispute between the parishes of Iberville and West Baton Rouge prior to 1859.”
It seems to us that under the very terms of the act of 1859 the disputed territory cannot extend beyond the 40-arpent line permanently fixed as the boundary line of West Baton Rouge. But this line has never been fixed by a survey, and since 1859 the state and parochial authorities and the owners have treated all of section 10 as lying wholly within the limits of the parish of Iberville. This was the result of a common error, which under the maxim of the law, “Communis error facit jus,” cannot prejudice the acquired rights of the citizen. See Cumming v. Biossatt, 2 La. Ann. 794. This is the rule relative to the registry of mortgages, and there is no good reason why it should not be applied to assessments and taxation. All the titles were of record in the parish of Iberville, and set forth that the whole section was situated within the limits of said parish. The assessor had no guide but the record, and listed the property accordingly. The parish of West Baton Rouge made no claim of territorial jurisdiction. We are of the opinion that the assessment of 1885, made in the parish of Iberville, under these circumstances, was valid and enforceable, and that the taxes were properly paid to the tax collector of said parish, who had appar-' ent authority to collect.
, The title was not of record in the parish of West Baton Rouge, and the assessor, in listing the land, had to consult the conveyance records of the parish of Iberville. This action of the assessor, taken without notice to the authorities of the parish of Iberville and to the owners of the property, led to a double assessment of a large portion of the tract, and to its adjudication to the state for taxes in the year 1886. All taxes due the state and levee district had been previously paid by the owner. At most, there was a claim for taxes due the parish of West Baton Rouge,
In Wilbert v. Michel, 42 La. Ann. 853, 8 South. 607, this court held that, where property has been assessed to two different persons for the same year, a payment of the taxes by either will defeat the power of the tax collector to sell, and it matters not that *192 the party making the payment is not the true owner. In Lefebre v. Negrotto, 44 La. Ann. 792, 11 South. 91, we held that the sale by the state of property on which taxes have been paid is an absolute nullity. In Brown v. Land Co., 48 La. Ann. 1188, 20 South. 711, we announced the same doctrine, adding that it is immaterial who paid the taxes. In Kellogg v. McFatter, 111 La. 1037, 36 South. 112, we said that it did not concern the state by whom payments were made, or that they were made under assessments erroneous as to description.
The state is a quasi creditor for taxes, and, if they be paid, it matters not, in reason and justice, under what assessment or by whom payment is made.
Dual assessment and payment of the taxes prior to date of sale are causes of nullity especially excepted from the curative force of article 233 of the Constitution of 1898.
The tax sale of 1886 was, as to the state, void, and the fact that some taxes may have been due the parish of West Baton Rouge does not change the situation, as sales for taxes, partly legal and partly illegal, are invalid. We applied this doctrine in Hansen v. Sheriff, 52 La. Ann. 1565, 28 South. 167, where the assessment had been reduced, and the sale had been made for taxes based on the original assessment. In Rougelot v. Quick, 34 La. Ann. 123, land was sold to pay state and parish taxes, and the court, finding that the latter had not been legally levied, held that the tax sale was void in toto, saying:
“It is likewise required that the taxes claimed must legally be due in their entirety; otherwise, the sale is void. Blackwell, 160; Cooley, 295.”
The court also cited Burroughs, p. 301, to the effect that in such cases there can be no apportionment or separation of the legal from the illegal.
Considered from another point of view, the state, having continuously, since 1885, assessed the property to plaintiff and his author, and collected taxes thereon, waived the prior forfeiture or adjudication to herself. In Martin v. Barbour, 140 U. S. 646, 11 Sup. Ct. 949, 35 L. Ed. 546, the court said:
“The state is bound by the act of her officers in placing the lot on the taxbooks for the years 1885 and 1886, and receiving from the appellees the taxes for these years. Equity will treat the transaction as a waiver of the prior supposed forfeiture, and will regard the tax paid for 1885 and 1886 as so much paid toward redemption, and will permit the payment of the rest.”
See, also, Pitre v. Schleslinger, 110 La. 234, 34 South. 425.
Our learned brother of the district court found that defendant’s possession was of recent date, and therefore overruled the pleas of prescription set forth in its answer. He, however, held the tax sale valid, because the payment of taxes was made on an assessment in another parish.
As the state taxes were paid in full on an assessment of the whole tract to a tax collector charged with their collection and accountable to the state, it is to be presumed that the money went with the state treasury; and the circumstances that a portion of the tract was assessed in the wrong parish cannot change the fact of payment. The taxes having been paid to the state, there was no warrant for the sale of a portion of the same property, situated in another parish, for the purpose of paying a portion of the same taxes. The contrary doctrine would lead to confiscation.
We, therefore, are of opinion that the tax adjudication in question was a nullity.
The district court did not pass on the demands for damages for slander of title, and for destruction of valuable timber, and we, therefore, will remand the case for further evidence and proceedings according to law.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is now ordered and decreed that plaintiff, be recognized as the lawful owner and possessor of that certain tract of land situated *193 in the parishes of Iberville and West Baton Rouge, on the east bank of Bayou Grosse Téte, and being the lower two-thirds of lot or section No. ten (10) in township eight (8) S., range eleven (11) E., S. E. district of Louisiana, containing 352.50 acres; and it is further ordered and decreed that the defendant, A. Wilbert Sons Lumber & Shingle Company, is without title to said portion of said tract of land claimed herein by plaintiff; and it is further ordered and decreed that the adjudication of 200 acres in said section, made by the sheriff and tax collector of the parish of West Baton Rouge to the state of Louisiana on June 5, 1886, as shown by deed recorded July 20, 1886, be declared null and void, and be canceled on the records; and it is further ordered and decreed that the call in warranty against the Citizens’ Bank be dismissed, and that defendant pay the costs of suit in both courts, and that this cause be remanded for further evidence and proceedings on plaintiff’s demand for damages.