15 So.2d 850

**THIRD DIST. LAND CO., Limited, v. LASSERE et al.**

No. 36849.

Nov. 8, 1943.

Fred G. Veith and O'Niell & O'Niell, all of New Orleans, for appellant.

Chas. F. Fletchinger, of New Orleans, for appellee.

HAMITER, Justice.

At a tax sale held by the City of New Orleans on September 8, 1924, for unpaid taxes of 1923, there was adjudicated to plaintiff, Third District Land Company, Ltd., a parcel of ground designated as Square 4867, bounded by Marigny, Dublin, Mandeville and Edenburgh Streets, and situated in the Third District of the named municipality. The adjudication was made under an assessment to one H. A. Lassere.

In this action plaintiff is seeking a confirmation of its tax title, proceeding under the provisions of Act No. 106 of 1934. After alleging in the petition the mentioned acquisition, it averred that such Square, along with other property, was obtained many years ago by the Milne Asylum for Destitute Orphan Boys (herein called Milne Asylum) from Alexander Milne; that in 1848 Milne Asylum sold to H. A. Lassere Lot One of said Square; that in 1850, at a public auction, the remaining eleven lots of the Square were purchased from the Milne Asylum by "one named Kernion whose first name was not given"; that "it does not appear from the conveyance records for the Parish of Orleans that Kernion has sold the said property"; and that plaintiff has been in possession of the land for more than five years.

Lassere and Kernion, or their heirs if they be not living, were cited as defendants through a curator ad hoc. This representative, in his answer, denied each of the allegations of the petition.

Milne Asylum, however, is the principal defendant herein. It filed an answer admitting its sale of Lot One to H. A. Lassere but denying that the person referred to as Kernion ever acquired from it any title, right or interest in the remaining lots of the square. Further, by way of a special defense, it averred that there was a dual assessment of the property in 1923, and that the taxes due to the City of New Orleans for that year were paid by it.

There was judgment, following a trial of the case on the issues thus created, rejecting the demands of plaintiff. Additionally, the court decreed the annulling and setting aside of the tax sale held in 1924. Plaintiff appealed.

Milne Asylum makes no claim to the ownership of Lot One of the square. That lot, admittedly, was sold by it to Lassere under a notarial act in 1848. But it does earnestly dispute the legality of both the

mentioned auction sale, occurring in 1845, of the square's remaining eleven lots, and the tax sale of 1924.

Respecting the defenses urged, the following statement is made in the brief of Milne Asylum's counsel, with which the attorneys for plaintiff seem to concur, viz.:

"It is conceded that if it can be said that Milne Asylum had divested itself of title to the remaining 11 lots under the purported adjudication to the person referred to as "Kernion", then the Milne Asylum is without interest to contest the plaintiff's tax title. Conversely, if "Kernion" acquired no rights, title or interest in the property under the alleged adjudication, then the tax sale is null and void so far as concerns Milne Asylum, if the evidence adduced discloses a dual assessment, and the prior payment of the taxes for the year 1923."

At the outset, it may be said that no one appears to have the actual physical possession of any part of Square 4867. Such parcel of ground has never been improved, and, along with other property in that immediate vicinity, it is burdened with a heavy growth of grass and weeds. There is evidence in the record indicating that in 1934 and again in 1939, plaintiff leased it to certain persons for cattle grazing purposes at a price of $1 per year; but no conclusive showing is made that the fences assertedly erected by the lessees enclosed the particular property in question.

Ownership of the square by Milne Asylum, a corporation, commenced in 1845 when it acquired from Alexander Milne a large tract of land described as being "bounded on the north by Lake Ponchartrain, on the east by Franklin Avenue, on the south by the lands of Gentilly and on the west by Elysian Fields or Ponchartrain Railroad." Within this boundary is Square 4867. As above pointed out, however, lot one of that square was sold by the corporation in 1848 to Lassere.

Later, there was filed in the notarial records of Orleans Parish a proces verbal of some auctioneers named Bonneval and Benit, reciting that by order of the Milne Asylum there was sold on September 9, 1850, various parcels of ground, including the eleven lots in Square 4867, which were adjudicated to Kernion, and further stating that the terms of payment for the sales were "one-eighth cash and the balance at 1, 2, 3, 4 and 5 years for notes without endorsement secured by mortgage." Accompanying the proces verbal was a notarial Act of Deposit dated September 19, 1850, executed by Andre D. Doriocourt, acting in his capacity of President of Milne Asylum for Destitute Orphan Boys. Doriocourt's signature was also affixed to the signed auctioneers' proces verbal.

The existence of the described instruments in the official records of Orleans Parish is recognized by appellee; but its counsel, in support of the attack made on the purported adjudication, directs our attention to the fact that there is nothing to show that the named auctioneers had written authority from Milne Asylum to make the sale of the eleven lots of the square, or that the purchaser, Kernion, ever complied with the terms of his bid.

Revised Civil Code Article 2606 (being identical with Article 2584 of the Civil Code of 1825), states with reference to an auctioneer's sale that:

"This officer, after having received in writing, from the seller, the conditions of the sale, must proclaim them, in a loud and audible voice, and afterwards propose that a bid shall be made for the property thus offered."

 This article has been interpreted in a number of cases in our jurisprudence as requiring that the authority given to the auctioneer by the vendor, as well as the conditions on which the sale is made, should be in writing. It reflects the principle, basic to our law, that title to real estate cannot be created by parol evidence.

In Harang v. Gheens Realty Co., 155 La. 68, 98 So. 760, 766, the following pertinent observation is made:

"* * * However, for the adjudication to vest title in the adjudicatee, it is necessary that the auctioneer have written authority to offer the property at auction. If no such authority is given him, the title does not pass by the adjudication. C. C. art. 2606; Cronan v. Succession of McDonogh, 12 La.Ann. 269; Reinach v. Jung, 122 La. [610], 612, 48 So. 124. In the case at bar, it does not appear that the auctioneer was authorized by Livaudais or by any one else, having the required power to offer the property at auction. The only reference to authority is the recital in the proces verbal that the sale was made by order of Livaudais and for his account,

but it does not appear that the order was a written one. Hence, as it does not appear that the auctioneer had written authority to offer the property when he made the sale, title did not pass to the adjudicatee by the adjudication."

In Silverstein v. Koppel, 166 La. 1075, 118 So. 224, 225, defendant was the highest and last bidder on three pieces of property offered at voluntary auction sale, but, after the adjudication to him, he refused to complete the purchase on the ground, among others, that the auctioneer did not have written authority from the owner to make the sale as required by Revised Civil Code Article 2606. After the offer of a written title was rejected by defendant, plaintiff sued for specific performance, and, alternatively, for a monied judgment. In denying relief to plaintiff, this court quoted the cited codal article and also the above given extract from Harang v. Gheens Realty Co. Additionally, we said:

"If the owner is not bound, in the absence of written authority from him to the auctioneer to sell, neither is the adjudicatee bound, and either is at liberty to repudiate the sale. For this reason, the owner cannot be permitted, after the sale, to bind the adjudicatee against his will by offering him a written title, as was held in the Jung case, cited above.

* * * * * *

"* * * The absence of such authority renders the adjudications null. Such defect strikes directly at the validity of the auction sale, and, on the question of

good title vel non, goes to the actual merits of the case.

.* * * *. * *

"The onus is on plaintiff, under the pleadings, to produce the proof of written authority in the hands of the auctioneer at the time of the sale, under penalty of the nullity of the adjudications, and plaintiff has failed to make such proof."

In the instant case, as there is shown no written authorization for the holding of the auction and in view of the above authorities, it must be held that the attempted adjudication of the eleven lots to Kernion was without effect.

The signing of the Act of Deposit and the accompanying proces verbal by the President of Milne Asylum did not accomplish a remedying of the defect, as plaintiff's counsel would have us hold; for it does not appear that such officer was duly authorized by the corporation's Board of Directors to bind that organization in the sale of its realty.

Next to be considered is the contention of Milne Asylum, under its special defense, that there was a dual assessment of the eleven lots of Square 4867 in the year 1923, together with a payment by it of the taxes for which the property was sold before the date of sale.

It is the settled jurisprudence that a tax sale of property upon which the taxes have previously been paid is an absolute nullity, not curable by the prescriptive period provided for in the Constitution. Wilbert v. Michel, 42 La.Ann. 853, 8 So. 607; Lefebre v. Negrotto, 44 La.Ann. 792, 11

So. 91; Brown v. Ponchartrain Land Co., 48 La.Ann. 1188, 20 So. 711; Kellogg v. McFatter, 111 La. 1037, 36 So. 112; Booksh v. A. Wilbert Sons Lumber & Shingle Co., 115 La. 351, 39 So. 9; Mecom v. Graves, 148 La. 369, 86 So. 917.

For many years prior to 1923, the properties of Milne Asylum were carried on the assessor's roll, and all taxes were paid by that owner, under an assessment in its name, reading:

"Milne Tract—Part Lot 3, Portion H bounded on the north by Lake Ponchartrain on the south by Gentilly Lands on the east by Franklin Avenue on the West by Elysian Fields less portions sold to various persons and assessed in squares and lots."

This specific description, it is to be noticed, is substantially the same by which Milne Asylum acquired its property from Alexander Milne in 1845; and within the recited boundary are many squares, including the one contested herein.

In 1923, this being the year for which taxes on Square 4867 were allegedly unpaid, a similar assessment to Milne Asylum was made. However, the assessor, on a work sheet used by him solely for his own benefit and convenience and kept in his office, sought to list with a pencil, following and beneath the assessment, the various squares covered and their respective valuations. The listings used had been obtained by him from engineers employed by the City of New Orleans to make a general survey of property assessments. Square 4867 was not so listed in pencil under Milne Asylum's assessment. Instead, the

assessor placed it on the rolls, and this for the first time, as belonging to H. A. Lassere, the person who in 1848 had purchased only Lot One of the square.

The 1923 rolls filed with the tax collector of the City of New Orleans described the assessment of the Milne Asylum as in previous years. The pencil and detailed listings made by the assessor were not furnished; neither was there anything else to provide notice that the contested square had been excluded from that assessment and assessed to another. Pursuant to and upon its assessment, Milne Asylum, many months prior to the tax sale in 1924, paid all of the taxes shown to be due by it.

Clearly error was committed by the assessor in assessing the entire square to H. A. Lassere, there being nothing in the official records to show that the latter had acquired more than one of the twelve lots of the square. It is equally obvious that Milne Asylum was at all times in good faith; and further that it had no knowledge of the mentioned erroneous act of the assessor. When paying the taxes it was confronted with an assessment, just as in previous years, of the Milne tract "less portions sold to various persons and assessed in squares and lots." Eleven lots of Square 4867 had not been previously sold, and it had the right to, and doubtlessly did, assume that the assessment of the Milne tract covered those eleven lots, as well as all other property owned by it.

■ Under these facts and circumstances we must and do conclude that there

was a prior payment of the 1923 taxes on the eleven lots, thus rendering null and void the tax sale as to them. Certainly it would not do justice to hold that the error committed by the assessor should be visited upon the Milne Asylum, undeniably in good faith, so as to result in the loss of its land.

■ Plaintiff, however, is entitled to confirmation of its tax title as to Lot One of the square. Such lot was owned by defendant H. A. Lassere, in whose name the tax sale was held, and the 1923 taxes due thereon were not previously paid, all of which is conceded by Milne Asylum. Moreover, as the latter asserts no ownership in that lot, it is without interest to contest plaintiff's title thereto.

For the reasons given, the judgment of the district court is reversed and set aside in so far as it concerns Lot One of Square 4867, situated in the Third District of the City of New Orleans, Louisiana, and there is now judgment rendered in favor of plaintiff, Third District Land Company Limited, and against all defendants confirming its title to such Lot One. With respect to the remaining eleven lots of said square, the district court's judgment is affirmed. Costs of this appeal are to be paid by appellee, Milne Asylum, while appellant, Third District Land Company, Limited, shall pay those of the trial court.

O'NIELL, C. J., is recused.

ROGERS, J., concurs in the result.