80 So.2d 583 (1955)
J. G. LA CAZE, Plaintiff-Appellee,
v.
Guy BOYCHER et al., Defendants-Appellants.
No. 4020.
Court of Appeal of Louisiana, First Circuit.
May 27, 1955.
*584 Fraser & Fraser, Many, for appellants.
Kay & Kay, DeRidder, for appellee.
TATE, Judge.
Defendants have appealed from judgment in a petitory suit recognizing plaintiff's title to 7.2 acres of land in Vernon Parish.
This matter was previously before this Court, but was remanded for impleader of an additional party defendant, see 71 So.2d 665. The facts are very fully stated in this prior opinion.
Briefly, plaintiff LaCaze in December 1945, by cash warranty deed acquired title to property in Vernon Parish described as:
Beginning at the southeast corner of NE¼ of NE¼, of Section 10, Township 1 North of Range 9 West and running north along said section line a distance of 444.4 feet to the point of beginning: Thence run north along said section line an additional distance of 444.4 feet; thence west to East side of the Highway 171 right of way; thence south along the east side of said highway 171 right of way a distance of 444.4 feet, thence east to the point of beginning, together with all improvements thereon.
LaCaze purchased from (a) J. H. Taylor, who had purchased from (b) Morris Belaire, who had purchased by two separate sales from (c) Rene Belaire and A. J. Comeaux their respective half-interests in the property. By stipulation, it is admitted that A. J. Comeaux and Rene Belaire had acquired title to the above described property *585 under a complete clain emanating from the U. S. Government.
In none of the deeds is the acreage of this tract indicated. At the suggestion of this Court in its original opinion, a survey was introduced in the supplemental proceedings below which showed the acreage of this tract to be 7.2 acres.
The conflicting claims of the parties arise from two separate tax sales for nonpayment of 1943 taxes made on May 13, 1944.
Assessment number 955 in the name of Morris Belaire contained essentially the description of the property as noted above, with the addition of the following: "2A(cres) Cut over Pine $10. Imprs on City Lots $140." The entire property offered for nonpayment of this tax assessment was purchased by A. L. Jones, who subsequently on March 20, 1946, executed a quitclaim deed to Morris Belaire, vendor in plaintiff's chain of title.
Substantially, the legal question at issue is whether this assessment and the payment of tax liability thereunder by tax sale constituted a tax assessment and tax satisfaction for the entire 7.2 acre tract in question, despite its description as containing only 2 acres.
If so, this satisfaction of the tax liability of the owners of the land renders an absolute nullity of the other tax sale for nonpayment of taxes due for the same year under assessment number 1064 in the name of A. J. Comeaux and Rene Belaire, under which defendants claim.
Assessment 1064 contained essentially the same description of the property as noted above, except that instead of describing the property as having 2 acres of cut-over pine (as in assessment 955), to the description herein was added "7A(cres) Cut Over Pine $30." By tax sale under this assessment, J. W. Mathis purchased the "West 5 acres fronting Highway 171 of the following" (description follows by metes and bounds as noted above). This portion of the property assessed was purchased under the provision that the whole property need not be sold if a bid sufficient to pay the entire unpaid taxes and costs be received for only a portion of the property assessed, in which case only the portion is sold.
J. W. Mathis sold the southern 2½ acres of this tract to Guy and Mamie Boycher, the original defendants herein, but retained the northern 2½ acres thereof; it was for failure to implead co-owner J. W. Mathis that on the original hearing in this Court, the matter was remanded. This was done, and certain additional evidence educed in the supplemental proceeding below.
Plaintiff, purchasing from him who owned the property prior to tax sale, and having redeemed the property assessed to this owner and sold at tax sale, relies upon the principle: "It is the settled jurisprudence that a tax sale of property upon which the taxes have previously been paid is an absolute nullity, not curable by the prescriptive period provided for in the Constitution", Third District Land Co., v. Lassere, 204 La. 451, 15 So.2d 850, at page 852; Chapman-Storm Lumber Co. v. Board of Commissioners, etc., 196 La. 1039, 200 So. 455; and the many authorities cited in both, these cases.
Defendants rely on the validity of the tax sale to J. W. Mathis dated May 13, 1944, under Assessment 1064-Comeaux. Hence, they argue, these proceedings commenced May 30, 1952, are perempted, being filed more than five years after said tax sale.
Cited to us are the following provisions of Article 10, Section 11, LSA-Constitution of the State of Louisiana:
"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted * * * within five years from the date of the recordation of the tax deed, if no notice is given. The fact that taxes were paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part *586 thereof on which the taxes for which it was sold were due and unpaid * * *." (Italics ours.)
To sustain the tax sale to codefendant J. W. Mathis under Assessment 1064-Comeaux, necessarily we must find that the earlier tax sale under Assessment 955-Belaire did not satisfy the 1943 tax liability at least as to the western 5 acres of the 7.2 acre tract.
The District Court found that the tax sale under Assessment 955-Belaire was prior to that under Assessment 1064-Comeaux and Belaire. Although the sheriff's deputy in charge of the tax sale did not remember the order of these specific sales, he testified that the usual custom and procedure of Vernon Parish tax sales was to offer for sale for unpaid taxes the property in numerical order of unpaid assessments, the lower-numbered assessments first. He was corroborated by the former sheriff as of the time of the tax sale, and not contradicted by any testimony. We feel the District Court's finding is correct that the tax sale under Belaire Assessment 955 occurred prior to that under Comeaux Assessment 1064.
Defendants urge, first, that the tax sale under Assessment 955-Belaire is null because the property assessed is impossible to ascertain by its description, the boundaries indicated including 7 acres and the property being described as containing only 2 acres. Defendants say that thus it is impossible to know which two acres of the tract is assessed. However, in the first place, we do not believe the description is so indefinite as to render the tax sale a nullity. The description is by metes and bounds, describing a point of beginning in a certain section, township, and range, thence proceeding north along the section line for 444.4 feet, thence west to Highway 171, thence south along highway right of way 444.4 feet, thence east to point of beginning. This description adequately describes the property so as to identify it unmistakably and is thus more than sufficient for purposes of tax sale description. See Jackson v. Irion, 196 La. 728, 200 So. 18, 133 A.L.R. 566. The additional designation of 2 acres following the complete description is actually surplusage. See Board of Commissioners, etc. v. Concordia Land & Timber Co., 149 La. 1053, 90 So. 402. Sales by fixed boundaries convey all the property between the boundaries, regardless of the quantity mentioned in the sale, Article 854, LSA-Civil Code, and jurisprudence thereunder. But, in the second place, of course the question is not really whether the tax sale under Assessment 955 is valid, but whether by said tax sale (regardless of description) the tax liability for the property in question was satisfied.
Defendants further argue that since Morris Belaire did not acquire the one-half interest of A. J. Comeaux until May 2, 1944, the earlier tax sale for 1943 taxes under Assessment 955-Belaire, Morris must have included only Belaire's earlier-acquired one-half interest in the land, while the tax sale the same date under Assessment 1064-Comeaux, A. J. & Rene Belaire to codefendant Mathis must have validly transferred title at least to the one-half interest of A. J. Comeaux. In support of this argument, defendants point out that since Assessment 955-Belaire was reduced from 7 to 2 acres, thus must have been an attempt to approximate in acreage the undivided interest of Belaire in said tract. However, the two assessments and tax sales themselves both indicate they are an assessment of the entire tract, not an undivided interest therein.
Defendants further argue that both tax sales should be given effect, that of 2 acres under Assessment 955, and that of 5 acres under Assessment 1064. Defendants thus say the Belaire Assessment 955 only assessed 2 acres of the tract, and the redemption only redeemed these two acres; and while the Comeaux Assessment 1064 assessed 7 acres, only the western 5 acres was sold thereunder. And since the taxes on these western 5 acres had not been paid by anyone, the tax sale thereof was valid and is beyond attack after the constitutional peremptive period. "The fact that taxes were paid on a part of the property [that is, the 2 acres] * * * shall not be cause for annulling *587 the sale as to any part thereof [that is, the 5 acres] on which the taxes for which it was sold were due and unpaid," Art. 10, Section 11, LSA-Constitution.
In our opinion, however, both assessments described the entire tract by boundaries, not parts thereof. The assessor's estimates of acreage for purposes of ascertaining the amount of tax due were (insofar as the description is concerned) surplusage.
Assessing the property of a parish and making up tax rolls is a tedious and detailed process, humanly impossible to perform without the occurrence of clerical errors. The courts have taken that into consideration in the interpretation of the tax sale provisions in order that landowners, who have attempted to satisfy the tax liability upon their property, be not deprived thereof through clerical errors necessarily resulting from the assessment process.
For instance, payment of taxes on property by the owner under one assessment prevents acquisition of title in another by tax sale for unpaid taxes under a dual assessment, Pratt v. Dalgarn, 166 La. 35, 116 So. 585; Jefferson v. Schenck, La.App., 145 So. 65. Also, in the event it is argued that only 2/7ths of the taxes were paid, "It is well settled that a sale made for taxes a part of which were previously paid, no matter by whom, is absolutely null and is not protected by the prescription of three [now five] years. Harris v. Deblieux, 115 La. 147, 38 So. 946; Booksh v. A. Wilbert Sons, 115 La. 351, 39 So. 9; Doullut v. Smith, 117 La. 491, 41 So. 913; Page v. Kidd, 121 La. [1] 6, 46 So. 35; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921." Mecom v. Graves, 148 La. 369, at page 372, 86 So. 917 at page 918. See also Prampin v. Southern Chemical Works, La.App., 53 So.2d 210.
In the supplementary proceedings below, plaintiff LaCaze testified that when he bought the property by boundaries and undescribed acreage in 1945 from Morris Belaire, he found Belaire's 1943 taxes unpaid. The assessment described the entire tract, which had been sold at tax sale in May, 1944. He had the property redeemed from the tax sale purchaser under the Belaire Assessment. He testified that had he known of the dual assessment and second sale under Comeaux & Belaire Assessment 1064, he would have required M. Belaire to redeem thereunder also to avoid the possibility of lawsuit.
But checking the tax rolls, the purchaser would have found his vendor's (Morris Belaire's) 1943 taxes unpaid on the entire tract, but his vendor's vendor (Comeaux and Rene Belaire) 1942 and earlier taxes paid on the entire tract.
The property owner should not be penalized for the clerical error of the assessor's staff, unavoidable in making up the tax rolls, in either striking a "2" instead of a "7" in describing the acreage, or else in failing to describe Morris Belaire's interest as only a "one-half undivided interest in" the tract.
Defendant J. W. Mathis, who was made party defendant at a later date than defendants Boycher, urges on his own behalf that even if the tax sale is void, he has acquired title to his own remaining 2½ acres by ten years' good faith possession under deed translative of title, Article 3478, LSA-Civil Code, since suit against him was not filed until August 1954, or more than ten years after he purchased the tract at tax sale in May 1944.
For even though a tax sale is invalid, this invalid deed may be the basis for acquisition of an indefeasible title by ten years' prescription acquirendi causa under Article 3478, if the tax purchaser is in good faith and takes actual and notorious possession of the property, Eivers' Heirs v. Rankin's Heirs, 150 La. 4, 90 So. 419, containing an extensive citation of authorities.
J. W. Mathis and his son-in-law, Van Emmon, offered the sole testimony of possession by Mathis. Both Mathis and Van Emmon admitted that so far as they knew, *588 LaCaze had no knowledge of the alleged acts of possession.
Mathis testified that at some unstated date after purchasing the property, he hired a surveyor "and went to the corner and measured up the four hundred feet on the south side". Mathis further testified that on another occasion of unstated date or time he saw somebody piling logs on the land and went to them and gave them permission to continue piling some logs.
Van Emmon testified that he had stored some cinder blocks "about middleways the property" for several months. When asked how he knew the lines, he stated he was there when the survey was made. When asked "When was that?" he replied: "I don't know, several years ago, after we acquired the property."
Corporeal possession is necessary to commence the acquisitive prescription under a deed translative of title, Article 3478, LSA-Civil Code (though thereafter civil possession may be sufficient to continue possession, Article 3487, LSA-C.C.). The party relying on acquisitive prescription has the burden of proving possession, Ernest Realty Co. Inc., v. Hunter Company, Inc., 189 La. 379, 179 So. 460. It would not appear that defendant Mathis had borne the burden of proving corporeal possession at any time between May, 1944, (tax sale) and August 1944, or more than ten years before impleader of Mathis in August 1954, when the only testimony as to date of the earliest alleged acts of possession (running the lines) was that it occurred "several years" before the supplementary trial on October 21, 1954.
But we might further add that the possession should be open and notorious enough to enable the owner to know of a claim adverse to his so that he may take steps to protect his right to the property. "In short, the rule is that there must be such external signs of possession to indicate clearly that the possessor holds control and dominion over the property." Martel v. Hunt, 195 La. 701, 197 So. 402, at page 407. Thus, a mere survey of boundary lines where they are not plainly and permanently marked does not constitute open and apparent possession, Albert Hanson Lumber Co. v. Baldwin Lumber Co., 126 La. 347, 52 So. 537, Pierson v. Shepherd, 6 La.App. 333. See also Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211.
We therefore feel that codefendant Mathis did not acquire title by prescription acquirendi causa to any portion of the tract.
For the above and foregoing reasons, the judgment recognizing plaintiff's ownership to the entire 7.2-acre tract is affirmed. Costs to be paid by appellants.
ELLIS, J., concurs in the decree.