TATE, Judge.
This is an action to annul a tax title. Plaintiffs appeal from adverse judgment.
The legal issue concerns whether payment of taxes on a tract wholly assessed in one parish invalidates the tax sale by the neighboring parish of that portion of the. tract actually situated in the latter parish.
The facts are stipulated.
Defendants’ predecessor in title purchased at tax sale in St. Martin Parish the 89.11 acres involved in this controversy. This tract lay south of the Bayou Portage, the undisputed boundary line between St. Landry and St. Martin Parishes. It is unquestioned that the land was actually situated in St. Martin Parish, although described as being in St. Landry Parish both by the original patent from. the State,, as well as by all the subsequent mesne conveyances through which plaintiffs acquired record title thereto from the original pat-entee. The original patent and these subsequent deeds conveyed title to a-201.06 acre tract of land located in Sections 26 and 35, T7S, R6E; most of which acreage was north of the Bayou Portage and correctly designated as in St. Landry Parish.
. The entire tract, correctly described by governmental section numbers, was assessed in St. Landry Parish up through 1951. Taxes thereupon were paid by plaintiffs and their predecessors in title. Prior to the tax sale giving rise to this contro,--versy, all record title to the property — including the 89.11 acres involved within the larger tract, always described as entirely located in St. Landry Parish — was solely recorded in St. Landry Parish.
*136 In 1943, for the, first time, the 89.11 acre tract was assessed in St. Martin Parish. Properly described by governmental section number, it was assessed to “unknown owner’s” on St. Martin Parish’s supplemental tax roll for 1942 taxes; see LSA-R.S. 47:1-964, 1966. Later that year, D. B. Ozenne purchased the acreage at St. Martin Parish tax sale for unpaid 1942 taxes due in the amount of $26.83. All defendants claim title through Ozenne’s acquisition at tax sale.
It is stipulated that plaintiffs, record owners of the land, had no actual notice or knowledge that'the land acquired‘by them as located entirely in St. Landry Parish, was actually partly situated in St. Martin Parish until immediately prior to institution in 1952 of this suit to annul the tax sale through which defendants claim.
Both parties rely on Article 10, Section 11, LSA-Constitution of the State of Louisiana, which provides in part:
■ “No sale of property for taxes shall be set aside for any cause, except on proof .of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted * * within five years from the date of the recordation of the tax deed, if no notice is given.” (Italics ours.)
Defendants of course urge that this suit is barred by the’ constitutional peremption of five years.
rPlaintiffs, on .the contrary, urge that their payment of 1942 taxes in St. Landry Parish constitutes a prior payment of the taxes for which the property was sold. It is, of course, well settled that a tax sale of property upon which the taxes have previously been paid is an absolute nullity, 'not curable by the prescriptive period provided by the Constitution, Third District Land Co. v. Lassere, 204 La. 451, 15 So.2d 850, La Caze v. Boycher, La.App. 1 Cir., 80 So.2d 583.
Rlaintiffs-appellants rely particularly on Booksh v. A. Wilbert Sons Lumber & Shingle Company, 115 La. 351, 39 So. 9, and Kernan v. Young, 119 La. 238, 44 So. 1, 43 So. 1018. In these cases, the tax sale by an adjacent parish of the portion of the land actually situated therein, was held invalidated by the prior good faith payment by the record owners of the taxes in the parish where the record title to the land (included in a larger tract) was recorded and where the property was assessed.
However, the Kernan case is. distinguished among other reasons by the fact that the tax debtor had continuously been in corporeal possession o'f the land, which our jurisprudence has uniformly held prevents the running of the constitutional per-emptive period, Di Giovanni v. Cortinas, 216 La. 687, 44 So.2d 818, see Fordham and Hunter, “Some Observations on the Louisiana Property Tax Collection System,” 7 La. Law Review 459 at 464-466.
Likewise, the Booksh case can clearly be distinguished from the present. Therein, the parish boundary line was in dispute. The land actually lay in West Baton Rouge Parish. It was the common understanding that the property in dispute was situated in Iberville Parish, wherein record title was recorded and in which parish the taxes on the property had been continuously assessed and paid through the year 1885. In that year, the adjacent parish, West Baton Rouge, also. assessed the property as being situated therein. The tax adjudication by West Baton Rouge Parish in 1886 was held, invalid as against the true owners. The substance of the holding of this case is as follows, 115 La. 356, 39 So. 9:
“This improper, assessment was -the result of a common error, which * * * cannot prejudice the acquired rights of the citizens. * * * We are of the opinion that the assessment of 1885, made in the parish of Iberville, under these circumstances, was valid and enforceable, and that the taxes were properly paid to the tax collector of said parish, who had apparent authority to collect.”
*137 In the present case, of course, the parish boundary line was not in dispute. There was no “common error”. .
In Albritton v. Childers, 225 La. 900, 74 So.2d 156, our Supreme Court specifically held invalid the assessment and tax sale by East Baton Rouge Parish of the portion of the tract actually situated in East-Feliciana Parish. Although the original deed described the property as located in East Baton Rouge Parish and was recorded therein, the situation was specifically distinguished from that in the Booksh case: for there could be no “common error”, the East Baton Rouge-East Feliciana parish boundary being well established by survey long prior to the assessment and tax sale.
The following statutory provision, which was not in effect at the time of the Booksh assessment and tax sale, now governs the assessment of tracts partly situated in two parishes:
LSA-R.S. 47:1952: "* * * When a line between two parishes divides a tract of land, or plantation, each portion shall be assessed in the parish in which it lies * * *. When the lines of parishes are in dispute as to their real location, the lines as shown by ‘Hardee’s Map’ of 1895, shall be the lines for assessment purposes and the parish or parishes affected thereby shall be governed by such lines unless a court having competent jurisdiction shall decree otherwise.” Section 11, Act 170 of 1898, is source' of this provision.
In a case where the ground location of the boundary line between Grant and Rapi-des Parishes was indefinite and uncertain, “it was the duty of the assessor of Grant Parish under the law to be guided by Har-dee’s Map .of 1895 and assess the property for taxation in that parish. The object and purpose of the statute in providing'that Hardee’s Map of 1895 should govern for the purposes of assessment where parish lines are in dispute as to their real location was to make certain that the same property would not be assessed in two parishes”, Roy O. Martin Lumber Co. v. Baird, 225 La. 14, 71 So.2d 865, at page 868. In this case, a tax' sale made under assessment by Grant Parish was held valid, although the owner of record claimed the greater portion of the tract was actually situated in Rapides Parish per War Department surveys. (His title deed described the property as ‘“situated in Grant Parish and/or Rapides Parish, Louisiana’ ”.)
As appellants urge, these two cases may somewhat be distinguished factually from the present. However, we feel they support a holding that not' only invalid are tax sales based upon assessments of property actually situated in another parish, made in violation of LSA-R.S. 47 :- 1952, above-quoted: the illegal' assessments themselves are invalid. Such invalid assessments are ineffective not only for purposes of acquisition of tax sale title based thereupon, but also for purposes of satisfying (by payment in accordance therewith) any tax liability on the land thus invalidly assessed. Contrariwise, tax sales of property assessed in compliance with the provisions of LSA-R.S..47:1952 above set forth will be upheld..
In the present instance, the invalid assessment in St. Landry- Parish of land actually in St. Martin Parish could be basis neither of a valid tax sale of said land, nor of valid satisfaction of the tax liability thereupon. Contrariwise, .from the valid assessment of these lands in St. Martin Parish arose the usual legal consequences, including valid tax sale for non-payment of taxes per such valid asses'sment.
Plaintiffs-appellants likewise urge that the St. Martin Parish tax sale is invalid because “sales for "taxes, partly legal and partly illegal, are invalid”, Booksh v. A. Wilbert Sons Lumber & Shingle Co., 115 La. 351, at page 357, 39 So. 9, at page 11. The basis of this argument is that the payment in St. Landry Parish included full payment of State and drainage' district taxes upon said land, for non-payment of which taxes "(along with non-payment of St. Martin Parish taxes) the land was sold in St. Martin Parish. “It is well settled that a sale made for taxes a part of which were *138 previously paid, no matter by whom, is absolutely.null and is not protected by the prescription of three years [cases cited]”, Mecom v. Graves, 148 La. 369, at page 372, 86 So. 917, at page 918.
We will pretermit a discussion of whether at least some of the cases upon which this doctrine was based were constitutionally overruled by various additional protections afforded tax sales by the Constitutions of 1898, Section 233, 1913, Section 233, and 1921, Article 10, Section 11. For, as previously indicated, we cannot accept appellants’ premise that the taxes paid in St. Landry Parish in accordance with the invalid assessment could satisfy any part of the tax liability for the land in ¡St. Martin Parish, whether for State or for parish taxes.
Counsel for plaintiffs-appellants in most eloquent and able brief and oral argument finally urge that it is most inequitable that the record owners should lose their land when they paid the taxes thereupon in good, faith in the parish of its location according to record title and assessment. We are indeed cognizant that inequities must sometimes result when owners lose their property through inadvertent .nonpayment of taxes, see Drey£ous, "The Per-emption Trap”, 3 La.Bar Journal, No. 2, page 81.
But the People of Louisiana, by the constitutional provisions earlier cited herein, have attempted to provide the State’s governmental units with adequate revenues and tax collecting machinery by affording greater security in titles derived from tax sales, see Fordham and Hunter, “Some Observations on the Louisiana Property Tax Collection System,” 7 Louisiana Law Review 459.
In the present case, for instance, is one relying on a purchase at tax sale to be required to check the assessment rolls of other parishes to see whether by some mischance the land was incorrectly assessed and taxes paid therein? Or, rather, should the duty be upon the landowner to see that his land is properly assessed in the parish where actually situated, and to pay the taxes thereupon in said parish ?
The guiding principle to be derived from the jurisprudence cited seems to be that neither owner-taxpayer nor the purchaser at tax sale may rely upon an assessment invalid as being in a parish other than that in which the property is actually situated under LSA-R.S. 47:1952; and that such statutory provision governs whether or not an assessment can be the basis either of a valid tax satisfaction or of a valid tax title.
.For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.