BLANCHE, Judge.
Defendants-appellants, George W. Dodge et al., and Mrs. Ophelia Thibodaux et al., appeal an adverse judgment of the Seventeenth Judicial District Court in this con-cursus proceeding which was invoked by Placid Oil Company. The defendants-ap-pellees, Mrs. Lula Isabel Beauvais La-fargue et al., were declared to be owners of the receipts placed on deposit by Placid Oil Company.
The controversy involves the ownership of the East One-Half of the Northeast One-Fourth of Section 60, Township 15 South, Range 15 East.
The chain of title of the Dodge group originated in a deed dated January 20, 1913, to Napoleon Cypress Company, Ltd., from Mrs. Erita Boudreaux, widow of Leo Thibodaux, and Edgard Aucoin, tutor ad hoc of the Thibodaux minor children. Napoleon Cypress was liquidated and the transfer of assets was made to the shareholders who are represented herein by George W. Dodge.
The chain of title of the Thibodaux group originates from Leo Thibodaux, and it is their contention that the sale from Edgard Aucoin, tutor ad hoc of the minor children of decedent, Leo Thibodaux, to Napoleon Cypress, insofar as it affects the interests of the minor heirs of Leo Thibo-daux was null and void. The nullity of the sale is sought on the grounds that the family meeting which authorized the sale of the minors’ interest in Thibodaux’s succession was not convened in accordance with the requirements of the Louisiana Civil Code.
The chain of the Lafargue group originates in a tax deed dated May 30, 1914, for unpaid taxes for the year 1913 which were assessed to Leo Thibodaux on the assessment rolls of the Parish of Lafourche. The Lafargue group was declared by the trial court to be the owner of the subject property by virtue of a valid tax title and, therefore, entitled to the receipts on deposit under a valid mineral lease agreement with Placid Oil Company.
Both the Dodge and Thibodaux groups contend that the trial judge erred when he failed to recognize the tax deed to the La-fargue group was null and void. It is their contention that the subject property was dually assessed in Assumption and La-fourche Parishes and that payment was made in the Parish of Assumption for taxes due for the year 1913 prior to the payment of the taxes by the Lafargue group and the adjudication to them of the property in Lafourche Parish. Both groups of *316 appellants cite Article 10, Section 11 [1] of the Louisiana Constitution of 1921 in support of their contention that a tax sale can be set aside at any time by a showing that said taxes were, in fact, paid prior to the tax sale. Appellants also cite Booksh v. A. Wilbert Sons Lumber & Shingle Company, 115 La. 351, 35 So. 9 (1905), for the proposition that such nullity results notwithstanding that such taxes were paid under a dual assessment in different parishes as the result of a common error in assessment.
On the trial of the matter the Dodge and Thibodaux groups filed identical exceptions of improper venue and lack of jurisdiction to the concursus proceeding on the ground that the property is located in Assumption Parish and that under Articles 80 and 4653 of the Louisiana Code of Civil Procedure the Parish of Lafourche does not have jurisdiction over a proceeding involving immovable property located in Assumption Parish. The exceptions were overruled by the trial judge and only the Thibodaux group appealed.
The Dodge group additionally asserts that the sale of the Thibodaux minor children’s interest in the property in the succession proceedings of Leo Thibodaux was not irregular and, therefore, the Thibodaux group has no claim to the subject land of the deposit.
The trial judge, in declaring the validity of the tax sale to the Lafargue group, reasoned as follows:
“The chain of the Hubert Lafargue, et al Group originates in a tax deed dated May 30, 1914, for unpaid taxes of 1913 assessed in the name of Leo Thibodaux in Lafourche Parish, by the Sheriff and Tax Collector of the Parish of La-fourche to the ancestor in title of the Lafargue Group. The Dodge Group and the Thibodaux Group contend that this tax deed is null and void because the property was dually assessed for 1913 on the tax rolls of Assumption Parish and taxes were paid under that assessment on December 11, 1913.
“Mr. Felix Dolese sold the property in question on April 29, 1911 to Mr. Leo Thibodaux and said deed recited that the property was located in the Parish of Lafourche. On September 20, 1911, there was an act of correction to Mr. Felix Dolese and Mr. Leo Thibodaux clarifying the intention of the parties that Mr. Leo Thibodaux had acquired all of the East Half (Ei/2) of the Northeast Quarter (NEj4) of Section Sixty (60), Township Fifteen (15) South, Range Fifteen (15) East.
“The 1913 Assessment Roll of La-fourche Parish shows eighty (80) ar-pents, being the East Half (Ei/2) of the Northeast Quarter (NE;4) of Section Sixty (60), Township Fifteen (15) South, Range Fifteen (15) East as being assessed in the name of Leo Thibodaux. The Dodge Group and the Thibodaux Group in support of their contention that the property was dually assessed introduced an exhibit marked for identification ‘Dodge #9’. An examination of this instrument reveals that it is a certificate issued by a Deputy Sheriff and Tax Collector in and for Assumption Parish, Louisiana, which certifies that all taxes for the years 1910 through 1915 on the properties therein described have been paid. The 1910 certificate shows property assessed to Felix Dolese and being forty (40) acres in the East Half {El/i) of the Northeast Quarter (NEJ4) of Section Sixty (60), Township Four *317 teen (14) South Range Fifteen (15) East. For the years 1911 and 1912 property description is the same, except for identifying the Township as Fifteen (15) rather than Fourteen (14). In 1913 the assessment appears in the name of Felix Dolese and is described as being twenty-three (23) acres in the East Half (E(4) of the Northeast Quarter (NE(4) of Section Sixty (60), Township Fifteen (15) South, Range Fifteen (15) East. The same identification and name is used for the years of 1914 and 1915.
“The Dodge Group and the Thibodaux Group did not introduce the assessment rolls of Assumption Parish for the year 1913 and based their claim of dual assessment solely upon this exhibit. No evidence was adduced to show that Felix Dolese owned only this property and no evidence was adduced to explain why the property was changed in description between the year of 1912 to 1913 from forty (40) acres to twenty-three (23) acres. It is significant that from the exhibits filed herein that it can at least be determined that Mr. Felix Dolese also owned the West Half (Wi/¿) of the Northeast Quarter (NEj4) of Section Sixty (60), Township Fifteen (15) South, Range Fifteen (15) East. (Dodge 5A). The Court is of the opinion that this certificate does not prove a dual assessment on the property in dispute herein. The assessment of Lafourche Parish was legally correct and enforcable.
“Consequently, in view of a valid assessment and a tax sale and considering the constitutional provisions for prescription and peremption, this Court concludes that the title to the property in question is vested in the Lafargue Group and as such they are entitled to a portion of the proceeds on deposit with this Court.” (Reasons for Judgment, Record, pp. 293-295)
The trial judge concluded that the Dodge and Thibodaux groups failed to prove that the property which Leo Thibo-daux acquired from Felix Dolese was assessed both in Assumption and Lafourche Parishes for the year in question. He then reasoned that since no dual assessment was proved, the Lafargue group’s tax deed vested title to the subject property in them and they were entitled to the proceeds on deposit. We agree that no dual assessment was proved, as the record shows that there is no explanation for the failure to produce the assessment rolls of the Parish of Assumption unless there were none concerning the subject property to be produced.
This conclusion, however, is not dispositive of the issue. Article 10, Section 11 of the Louisiana Constitution of 1921 provides that payment of taxes on property, prior to a tax sale of such, is not subject to the peremptive periods set forth therein, and, therefore, proof of such prior payment nullifies the subsequent tax sale. Article 10, Section 11, was interpreted in Booksh, cited supra, Tillery v. Fuller, 190 La. 586, 182 So. 683 (1938); La Caze v. Boycher, 80 So.2d 583 (La.App. 1st Cir. 1955), as not requiring proof of assessment but only proof that the taxes had been previously paid, no matter by whom. Following this interpretation, it is obvious that payment is the crucial issue and not assessment as relied upon by the trial judge.
The foregoing premise was further clarified in Mansfield Hardwood Lumber Company v. Butler, 234 La. 322, 99 So.2d 129 (1958), to require that an intention to pay the taxes on the subject property must be shown. In Mansfield the wrong quarter section of land had been assessed to a taxpayer due to a clerical error and taxes thereon were paid by him. That same taxpayer then sought to rely upon his erroneous payment of taxes upon the property which he had never owned in order to invalidate a later tax sale of the subject property. The Court recognized that the taxpayer relied upon the above-cited jurisprudence for the proposition that mere payment of taxes on the property, no matter by whom, would defeat a later tax sale *318 of that same property. However, the Court distinguished the cited jurisprudence and found that under the circumstances of the case before them more than mere payment was required, quoting from the Til-lery case, supra, as follows :
“ ‘The plaintiffs in this case cite and rely upon the decisions which maintain that a sale of property for taxes which have been paid is absolutely null, and not protected by the limitation of three years, no matter who paid the taxes * * *. In every one of these cases the party who paid the taxes, for which the property was afterwards sold, paid with the intention of paying the taxes on that identical property, and not by accident, or in consequence of an error of the assessor in describing the property assessed to the taxpayer.’ ” (Mansfield Hardwood Lumber Company v. Butler, 234 La. 322, 99 So.2d 129, 133)
In the instant case, although no dual assessment was shown, we do have what is purported to be a payment of taxes on at least twenty-three of the subject eighty acres for the year in question. However, whether there was an intention to pay the taxes on twenty-three acres of the subject property in Assumption Parish as required by Mansfield is very doubtful. The tax certificate offered in evidence merely shows that the property for the years 1910 through 1915 was assessed to Felix Dolese. There is no evidence concerning who paid the taxes. As pointed out by the trial judge in the above-quoted opinion, Dolese owned other property in the West One-Half of the Northeast One-Fourth of Section Sixty, Township 15 South, Range 15 East, and there was no explanation as to why the property was changed in description between the years 1912 to 1913 from forty acres to twenty-three acres. We note that it would have been, indeed, unusual for Dolese to have paid taxes on land he already sold some two years prior thereto. We further find it unusual that the land appears on the certificate of the Sheriff as being assessed for twenty-three acres when the deed by which Napoleon Cypress Company, Limited, acquired the property shows that the East One-Half of the Northeast One-Fourth of Section Sixty, Township 15 South, Range 15 East, contains eighty acres.
We are of the opinion that the case turns on the question of proof, and even though the tax certificate of the Sheriff of the Parish of Assumption seems to indicate that the taxes were paid, at least on a portion of the property, appellants have not sufficiently proved that the payment of the taxes in Assumption Parish was made with the intention to pay the taxes on the subject property prior to its adjudication at the tax sale in the Parish of Lafourche. Since we find the requisite intent was not shown by appellants, we need not consider the effect that payment of the taxes on only twenty-three of the total number of eighty acres would have on the subsequent tax sale of the entire tract.
We next consider the Thibodaux group’s contention that the concursus proceeding was instituted in the parish of improper venue. They contend that the Seventeenth Judicial District Court of Lafourche Parish lacked jurisdiction in this concursus proceeding, citing LSA-C.C.P. Art. 4653[2] and an Act of March 7, 1824.[3] They *319 argue that the boundary between Assumption and Lafourche Parishes established in the Act of 1824 places the subject property in Assumption Parish rather than in La-fourche and, therefore, according to Article 4653, the instant proceeding was required to be brought in Assumption rather than Lafourche Parish. They submit that according to the Act the upper boundary of the plantation of Etienne Fermier on the left bank is extended across Bayou La-fourche to the right descending bank, thereby giving a different boundary than that which has traditionally been used.
In determining that the property lay within the boundary of Lafourche Parish, the trial judge relied upon an Act of March 22, 1822,[4] which created Terrebonne Parish from the southern portion of La-fourche Parish and Act 231 of 1848[5] which provided for fixing of the boundaries between Terrebonne, Assumption, and Lafourche Parishes by their respective police juries. (Such boundary was never fixed, as the police juries could not agree.)
The Thibodaux group contends the trial judge erred in relying upon the Act of 1822, since it did not establish the Assumption-La fourche boundary but only the point of commencement of the newly created Terrebonne Parish at a point in the Parish of Lafourche Interior located midway between the lower corner of the Charles Ballot Plantation and the lower side of the Lacoupe of Bayou Boeuf. They then argue that the Act of 1824 should apply as *320 to the boundary determination, it being a later expression of the legislative intent. They contend the 1824 Act created the boundary between Assumption and La-fourche Parishes as being the upper boundary of the Fermier Plantation on the left bank of Bayou Lafourche and that same line is projected across the bayou until it intersects with the northern boundary of the newly created Terrebonne Parish. We acknowledge that appellants’ relocation of the boundary would place the subject property in Assumption Parish but, on the other hand, appellants acknowledged that the positioning of the boundary by the trial court corresponds to the traditional placement.
At the trial the Lafargue group’s expert civil engineer testified that he performed an independent survey which confirmed that the traditional boundary is the correct one and rejected the idea that the Act of 1824 controlled the boundary between Assumption and Lafourche Parishes on both the left and right banks of Bayou La-fourche. The Dodge and Thibodaux groups’ expert did not actually survey the land but only verified that the projection of the line from the Act of 1824 would place the subject property in Assumption Parish.
Act 231 of 1848 allowed the police juries of Assumption, Lafourche and Terrebonne Parishes to permanently establish their common boundaries. Had the Legislature intended that the Act of 1824 already established the boundary on the right bank as contended by the Thibodaux group, Act 231 would have been needless legislation, as the boundary would have already been established in 1824. Additionally, Section 1 of the Act of 1824 refers specifically to the left bank of Bayou Lafourche and Section 2 continues to describe the boundary line’s termination at a point on the left bank. Nowhere in the Act is the right bank discussed, nor does the Act purport to establish the end point of the line that appellant asserts is extended onto the right bank. We think the reason the end point of such line is not established by the Act is that is was obviously not the intent of the Legislature to extend it to the right bank. As the trial judge noted:
“To interpret the Act of March 7, 1824, in the manner in which the Dodge and the Thibodaux Groups' contend would be to read into said Act the projection of a line which the Legislature deliberately and obviously left out.” (Reasons for Judgment, Record, p. 296)
We find, as did the trial judge, that the evidence presented preponderates in favor of the traditional boundary line and he was, therefore, correct in overruling both the Thibodaux and Dodge groups’ exception to venue.
Since we find the Lafourche Parish tax sale to the Lafargue ancestors was valid, we are not required to consider the Thibo-daux argument concerning the sale of a minor’s assets in the Leo Thibodaux succession.
Placid Oil Company, prior to its exploration of the subject property for minerals, obtainéd leases from all groups of claimants. We find the Lafargue group’s claim to the subject property to be valid through the 1913 Lafourche Parish tax sale, and, therefore, they are entitled to the funds on deposit with the Seventeenth Judicial District Court.
For the foregoing reasons, the decision of the trial court is affirmed, at appellants’ costs.
Affirmed.

. Article 10, Section 11 of the Louisiana Constitution of 1921, in pertinent part, reads as follows:
“No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the. tax deed, if no notice is given. * * * ”

. LSA-C.C.P. Art. 4653 provides:
“Except as provided in the second paragraph of this article, a concursus proceeding may be brought in any parish of proper venue, under Article 42, as to any claimant impleaded therein.
“If the competing or conflicting claims are for money due or claimed to be due on account of, or otherwise involve, any sale, lease, or other transaction affecting or per-taming to immovable property or any character of interest therein, the proceeding shall be brought in the parish where the immovable property or any part thereof is situated.”

. The Act of March 7, 1824, reads as follows:
“Sect. 1. Be it enacted by the Senate and House of Representatives of the state of Louisiana, in General Assembly convened; *319 That the boundaries between the parishes of Assumption and the parish of Lafourche Interior, be, and are hereby fixed to the upper boundary of the plantation of Etienne Fer-mier, on the left side of Bayou Lafourche.
“Sect. 2. And be it further enacted ; That from the point where the upper line of the plantation of Etienne Fermier being continued intersects with Bayou Cabahannosse, the right bank of Bayou Cabahannosse, as far as Bayou Chevreuil, the right bank of Bayou Chevreuil as far as lake des Al-lemands, a line drawn from the mouth of Bayou Chevreuil to the mouth of Bayou des Allemands; the right bank of Bayou des Allemands, as far as grand lake Barataría; a line drawn from the mouth of Bayou des Allemands, to the mouth of Bayou Pierrot, the right bank of Bayou Pierrot, the half of Petit lac des Canards, the half of the Bayou which unites the last with lake Bond, the half of lake Rond, the half of the Bayou by which the said lake is united to lake des Ilets, from thence, the bank of the lake des Islets, from thence, the bank of the lake des Islets as far as la Passe a Mondion, the half of the Passe a Mondion as far as the sea, including the Grande He, shall constitute the eastern boundary line of the parish of Lafourche Interior, any law to the contrary notwithstanding.”

. The Act of March 22, 1822, reads, in pertinent part, as follows:
“Section 1. Be it enacted by the Senate and House of Representatives of the State of Lotiisiana, in General Assembly convened, That all that tract of country, lying to the westward of bayou Lafourche, bounded as follows, to the east, from the middle of the line drawn from the lower boundary of Charles Ballot’s plantation, to the lower side of Lacoupe of bayou Boeuf, thence following a line parallel with the bayou La-fourche, to within eighty arpens of bayou Terre Bonne, from thence winding round the settlement of the said bayou Terre Bonne, to the distance of forty arpens from bayou Lafourche, to be continued until a distance of eighty arpens, from the latter bayou, can be effected, without encountering the limits of the lands on bayou Terre Bonne; from thence still at a distance of eighty arpens from bayou Lafourche, a line parallel with the said bayou, to the bayou Blue-Water, following whose right bank to the sea, shall terminate its eastern boundary, to the west starting from the lower side of Lacoupe of bayou Boeuf to the settlements on the Atchafalaya, and following the eastern shore of Atchafalaya bay to the sea, including Marsh island, (Isle de Marais) shall form a separate parish to be called the parish of Terre Bonne.”

. Act 231 of 1848, in pertinent part, reads as follows:
“SECTION 1. Be it enacted, by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened: That in order to fix and establish the boundaries between the parishes of Ter-rebonne, Assumption and Lafourche Interior, the police jury of each of said parishes shall name and appoint two commissioners, who shall have full power to fix, determine, establish and mark out the boundary lines between their respective parishes, and a process verbal of their proceedings, duly signed by them, and recorded in the office of the parish recorder of each parish interested, shall have the force and effect of law.”